863 F.2d 1162
 57 USLW 2420, Prod.Liab.Rep.(CCH)P 12,007
 Mary Ann HIGGINS; Ronald Jones, as personal representative
of the estates of Crystal N. Jones and Esther S. Jones;
Mary Williams; Gilbert Allen; Sharon Patterson; Kevin P.
Higgins, as personal representative of the estate of Genieve
M. and Bridgette M. Higgins, Plaintiffs-Appellants,
v.
E.I. DuPONT de NEMOURS & COMPANY, Defendant-Appellee,
and
Dow Chemical Company; Union Carbide Corporation; Eastman
Chemical Products, Inc.; Mayor and City Council
of Baltimore, Defendants.
 No. 87-1739.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 3, 1988.
Decided Dec. 23, 1988.
 
 Alison Daryl Kohler (Phillips P. O'Shaughnessy, Sandbower, Gabler & O'Shaughnessy, P.A., Alex S. Katzenberg, III, Cohen, Snyder, McClellan, Eisenberg & Katzenberg, P.A. on, brief), for plaintiffs-appellants.
 Pamela Janice White (Jervis S. Finney, Ober, Kaler, Grimes & Shriver, William E. Gordon, Jr., on brief), for defendant-appellee.
 Before RUSSELL, MURNAGHAN and SPROUSE, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 Plaintiffs Higgins and Jones appeal from the district court's order granting summary judgment in favor of defendant, E.I. DuPont de Nemours & Co., Inc. ("DuPont"), regarding their survival actions. Plaintiffs also appeal the dismissal of their wrongful death actions, maintaining that they were not statutorily barred as untimely because of DuPont's fraudulent concealment of their claims. Finally, plaintiffs argue that this case was improperly removed from the Circuit Court of Baltimore, Maryland. Finding that diversity existed when summary judgment was entered and that summary judgment was proper, we affirm.
 
 
 2
 Because of the jurisdictional issue, a brief review of the procedural posture of the case is necessary before reviewing the district court's action on the merits. On December 9, 1985, plaintiffs filed their original complaint in the United States District Court for the District of Maryland (S-85-4896) against defendants DuPont and Dow Chemical Corporation ("Dow") on behalf of themselves and the estates of their dead children for the wrongful deaths of the children caused by the teratogenic effect of chemicals in Imron paint.[1] Plaintiffs voluntarily dismissed Dow when they learned that Eastman Chemical Co. ("Eastman") and Union Carbide Corporation ("Union Carbide"), not Dow, had supplied the constituent components of Imron. At that point, on September 15, 1986, plaintiffs filed an equivalent action in the Circuit Court for Baltimore City, adding Eastman and Union Carbide and the City of Baltimore ("City") as defendants.
 
 
 3
 On April 13, 1987, the state court found that the wrongful death actions were barred by the 3-year statute of limitations applicable to them, Md.Cts. & Jud.Proc. Sec. 3-904(g), and dismissed them. However, the state court denied similar motions of defendants who were not governmental in nature regarding the survival claims because the allegation of fraudulent concealment, which, if proved, would toll the limitations period created an issue which was a matter for the jury. The state court, however, on the motion of the defendant, dismissed the City on governmental immunity grounds.
 
 
 4
 On May 5, 1987, the defendants removed the state action to federal court (S-87-1108) where it was consolidated with the pending federal action against DuPont before Frederic N. Smalkin, the district judge. On May 26, 1987, Judge Smalkin adopted the state rulings as the law of the case in the removed action and entered similar orders dismissing the wrongful death actions of plaintiffs in the original action. Therefore, only the survival actions against the defendants remained.[2]
 
 
 5
 On July 28 and 29, 1987, Judge Smalkin denied DuPont's motion for summary judgment for the survival actions on the limitations grounds. On September 30, 1987, Judge Smalkin, however, granted summary judgment in favor of DuPont in the cases of Higgins, Jones and Allen, 671 F.Supp. 1063. Judge Smalkin found on the undisputed evidence that DuPont's warning label was adequate as a matter of law and that plaintiffs' unforeseeable misuse of the product cut off the chain of proximate causation. From this adverse decision plaintiffs appealed.
 
 I.
 
 6
 Plaintiffs brought the actions to recover for the deaths of their children and fetuses who allegedly died from the teratogenic effect of chemicals contained in Imron paint. Each of the husbands had worked for the Baltimore City Fire Department in the same fire house, where they used Imron paint to "touch up" the fire engines. Plaintiffs claimed that the deaths were caused by glycol ether acetates and lead supplied by Dow and contained in Imron paint which was developed, manufactured and distributed by DuPont. DuPont advertised Imron paint for sale through distributors for use by industrial professionals, such as fleet truck and transit systems, body shops, marinas, car dealers and manufacturers of aircraft, fire engines, heavy duty construction equipment, and utility vans. Imron was sold and delivered by DuPont to C & R Paint Supply, Inc. ("C & R"), which in turn, sold and delivered the product to the Key Highway repair yard of the Baltimore City Fire Department, where fire apparatus was regularly painted and repainted. C & R never sold or delivered Imron paint directly to the City firehouses nor did it directly solicit business from the Fire Department through sales representatives.[3] Furthermore, it is undisputed that C & R understood that the City's fire vehicles were repaired and painted only at the Key Highway repair shop. Nothing suggests that C & R even suspected that Imron paint was sent out to the individual fire houses until 1985 when it received an unusual request from the City Fire Department for some empty quart containers.
 
 
 7
 However, from 1979 to 1985, the City Fire Department's Key Highway facility redistributed quantities of Imron in both marked (i.e., with DuPont's labels affixed) and unmarked one-gallon paint cans, coffee cans, or glass jars to the plaintiffs for their use in touching up fire apparatus in the firehouse. The City did not provide the plaintiffs with separate instructions or warnings as to the use of Imron, or with protective clothes to wear while applying the Imron paint.
 
 
 8
 Each of the labels affixed to the Imron paint products[4] which C & R sold to the City Fire Department stated in clear lettering on the front of the cans:
 
 
 9
 FOR INDUSTRIAL USE ONLY by professional, trained personnel. Not for sale to or use by the general public.
 
 
 10
 This warning was accompanied by instructions on the back of the label which required the use of a supplied-air respirator, eye protection, gloves, protective clothing and adequate ventilation.[5] Furthermore, C & R supplied Material Safety Data Sheets ("MSDS") to the City Fire Department which repeated the safety precautions requiring the use of a respirator, eye protection, gloves, and adequate ventilation.[6] However, none of the information constituting a warning specifically warned of the possible teratogenic effects of the product.
 
 II.
 
 11
 We turn first to the question of whether the district court lacked jurisdiction to enter summary judgment because the state case was improperly removed. On April 13, 1987, the City of Baltimore was dismissed from plaintiffs' action in state court, resulting in complete diversity between plaintiffs and defendants. On May 5, 1987, defendants removed the state court action to federal court pursuant to 28 U.S.C. Sec. 1446(b).[7] Plaintiffs did not object to removal at the time and have only raised an objection subsequent to the district court's adverse rulings on the merits.
 
 
 12
 Diversity must be established at the time of removal. Even so, a case may nevertheless not be removable depending on whether the non-diverse party is eliminated from the state action by voluntary or involuntary dismissal. See Heniford v. American Motors Sales Corp., 471 F.Supp. 328, 334-35 (D.S.C.1979). If the plaintiff voluntarily dismissed the state action against the non-diverse defendant, creating complete diversity, the state action may be removed because there is no risk that diversity will be destroyed later on. The voluntary act has demonstrated the plaintiff's desire not to pursue the case against the non-diverse party. However, this is not the situation if the non-diverse party has been involuntarily dismissed by order of the state judge. The plaintiff may choose to appeal the dismissal. Although complete diversity may temporarily exist between the parties, suggesting that removal is proper, diversity jurisdiction may ultimately be destroyed if the state appellate court reverses the dismissal of the non-diverse party. Therefore, some cases are not removable despite complete diversity between the parties. Although disagreement exists whether the involuntary/voluntary distinction survived the 1949 amendment to Sec. 1446, the trend appears to retain the distinction. See 14A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Sec. 3723, at 317 (1985). Therefore, plaintiffs' state action may have been improperly removed.
 
 
 13
 Despite this, the Fourth Circuit recently held that so long as jurisdiction is present at the time of judgment, that judgment must stand. Able v. Upjohn Co., 829 F.2d 1330 (4th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1229, 99 L.Ed.2d 429 (1988). In Able, plaintiff sued several defendants, one of whom was non-diverse, in state court. The diverse defendants removed the state court suit pursuant to Sec. 1441(c).[8] Abel objected, and the district court severed his claim against the non-diverse party and sent it back to state court. The other claims against the diverse defendants were retained in the district court. On appeal, the Fourth Circuit noted that removal under Sec. 1441(c) had been improper because Abel's claims against each defendant were not "separate and independent." Id. at 1332-33. However, "interests of finality and judicial economy[9] also strongly suggest that the district court's judgment should not be disturbed where a party fails to avail himself of a remedy that might earlier have resolved the removal question." Id. at 1333. Abel had failed to file an interlocutory appeal challenging the removal and partial remand.
 
 
 14
 In our case, diversity existed at the time judgment was entered. Furthermore, plaintiff's failure to object to the propriety of removal in the first place seems more egregious than the failure to file an interlocutory appeal by plaintiff in the Able case. Although the Able case involved removal pursuant to Sec. 1441(c) and our case involves removal pursuant to Sec. 1446(b), the underlying concern that the judgment not work an expansion of federal jurisdiction is preserved in both situations.[10] Therefore, the district court acted with jurisdiction when it entered summary judgment.
 
 III.
 
 15
 The narrow questions before us on summary judgment are whether any genuine issues of material fact exist for the jury and if not, whether the district court erred in applying the substantive law. Charbonnaqes de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979). See Rule Fed.R.Civ.P. 56(c). Appellate courts review grants of summary judgment de novo.
 
 
 16
 The district court found that the firefighters were not "professional, trained personnel" for the obvious use of Imron products, i.e., painting.[11] That they were professional firefighters and not professional painters was evident from the manner in which they mixed and applied the paint. The evidence shows that the firefighters painted in their fire department work uniforms, mixed the paint in cups and sometimes with their fingers and did not heed any of the label precautions which a professional painter would have taken seriously. We agree with the district court that the labels were adequate enough to warn plaintiffs that they were not sufficiently well-trained to use Imron paint.[12] Therefore, Dupont did not distribute a product which was unreasonably dangerous when used for a purpose and in a manner that is reasonably foreseeable, i.e., for industrial use by trained painters. Imron paint was not defective. Ellsworth v. Sherne Lingerie, Inc., 303 Md. 581, 596, 495 A.2d 348, 355 (1985); Simpson v. Standard Container Co., 72 Md.App. 199, 206, 527 A.2d 1337, 1341, cert. denied, 311 Md. 286, 533 A.2d 1308 (1987).
 
 
 17
 Because plaintiffs did not fall into the class of foreseeable users of Imron paint which DuPont had specifically circumscribed to limit its potential liability, the district court held that had the City heeded the warning and not redistributed Imron paint in unlabeled cans to the firehouse, plaintiffs would not have been injured. Likewise, plaintiffs could not complain when they failed to observe the warnings on the Imron paint cans which the City redistributed to them in the original, labeled cans. The district court held that such a misuse of the product barred recovery as a matter of law. Although our sympathy rests with the plaintiffs who have suffered unspeakable losses, we must agree with the district court that plaintiffs' real complaint lies with the City Fire Department[13] and not DuPont.
 
 
 18
 Misuse of a product may bar recovery against the manufacturer where the misuse is the sole proximate cause of damage, or where it is the intervening or superseding cause. Ellsworth, 303 Md. at 596, 495 A.2d at 355. Product misuse is defined as use of a product in a manner that could not reasonably be foreseen by the defendant. Id.; Simpson, 72 Md.App. at 206, 527 A.2d at 1341; Payne v. Soft Sheen Products, Inc., 486 A.2d 712, 725 (D.C.App.1985). Reasonably foreseeable uses include " 'the incidental and attendant consequences that accompany normal use.' " Payne, 486 A.2d at 726 (citing Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841, 863 (5th Cir.1967), cert. denied, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968)).
 
 
 19
 The district court found that the normal use of Imron paint was restricted to industrial purposes for which professional painters, who appreciated the attendant risks, were required. The district court held that DuPont could not reasonably foresee that either the City would redistribute Imron paint in either labeled or unlabeled containers or that plaintiffs, who were amateur painters, would use Imron paint after reading the various conspicuous warnings contained on the labeled cannisters which did reach them. Although the district court relied heavily on the language of a 1985 label which was much improved over the earlier versions, we still agree with the basic reasoning of the district court, applicable with respect to earlier labels reaching back to 1973 as well, that the firefighters were not professional, trained personnel. Plaintiffs failed to provide any contradictory evidence. DuPont had a right to rely on its warning to cut off the chain of causation and to insulate it from becoming a virtual insurer against all injuries arising from its product. Simpson, 72 Md.App. at 206, 527 A.2d at 1341.[14]
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Kevin and Mary Ann Higgins are the parents of twins who were stillborn on January 1, 1982; Ronald Jones and Mary Williams are the parents of twins born September 11, 1983 and who died on September 13 and 17, 1983; Gilbert Allen and Sharon Patterson's fetal twins were prematurely aborted on February 19, 1982
 
 
 [2]
 The wrongful death action of Ronald and Mary Jones also remained intact because they filed their complaint within the 3-year period from the death of their twins who died in September of 1983
 
 
 [3]
 Orders were filled when the Key Highway facility contacted C & R
 
 
 [4]
 The products consisted of Imron Enamel, Activator and Reducer. Other paint-related supplies were also provided by C & R such as sandpaper, masking tape, lacquer thinners and respirator-type masks
 
 
 [5]
 The district court apparently relied on a 1985 label for this language in the instructions. Earlier labels were less explicit. For example, the Imron Activator label stated the following instructions on the back of its 1980 label:
 If engineering and administrative controls of air contaminants are not feasible, wear an air line respirator (TC-19C NIOSH MESA, or equivalent) during application and until work area has been exhausted of all vapor and spray mist. If air line respirators are not feasible and the atmospheric concentration of monomeric isocyanates is less than 10 times the allowable time weighted average, wear a vapor particulate respirator (TC-23C NIOSH MESA, or equivalent) recommended by the manufacturer for use with isocyanate vapors and mists. Individuals with chronic respiratory problems or prior allergic respiratory reaction to isocyanates must not be exposed to vapors or spray mist containing isocyanates.
 Avoid breathing vapor or spray mist. Avoid contact with eyes and skin. Keep away from heat, sparks and open flame. Keep container closed when not in use. Do not transfer contents to bottles or other unlabeled containers.
 The Imron Enamel label dated 1983 neither required nor recommended the use of any respirator. It also did not specify the use of any protective clothing, either gloves or glasses. The Imron Enamel label instructions read:
 Keep away from heat, sparks and flame. Avoid prolonged or repeated breathing of vapor or spray mist and contact with eyes and skin. Keep container closed when not in use. ................................................................................
 Use only with adequate ventilation. The 1982 label on the Imron Reducer stated the same as the Enamel label, but added "Do not transfer contents to bottles or other unlabeled containers."
 
 
 [6]
 An example of the language on the MSDS follows:
 Use adequate ventilation. A cartridge-type respirator, used in accordance with the manufacturer directions is recommended if engineering and administrative controls of air contaminants is not feasible. Provide sufficient ventilation to keep below given ILV & LEL. Use protective gloves for prolonged or repeated contact. Use safety eyewear to prevent splashes. Use appropriate industrial hygiene practices.
 This appears to be a MSDS for 1973. In later years, the instructions were changed to require a respirator and gloves.
 
 
 [7]
 Sec. 1446(b) states, in part:
 "If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant ... of a copy of an ... order ... from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. Sec. 1446(b).
 
 
 [8]
 Section 1441(c) allows a defendant of diverse citizenship to remove a case in which complete diversity of citizenship is lacking where the claim against the diverse defendant is "separate and independent" from the claims against non-diverse defendants. 28 U.S.C. Sec. 1441(c)
 
 
 [9]
 The Fourth Circuit noted that even though the interests of judicial economy are most pressing where an action has proceeded to trial, the same concerns apply to summary judgment. Id. at 1334
 
 
 [10]
 Kanzelberger v. Kanzelberger, 782 F.2d 774 (7th Cir.1986), cited by plaintiffs, is inapposite. In Kanzelberger, diversity did not exist at the time the judgment was entered by the federal court because it was discovered that one of the parties was non-diverse. In our case, at the time of the judgment, all of the parties were diverse as required under Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)
 
 
 [11]
 Although the district court conceded that some dispute existed with respect to the term "industrial" and that plaintiffs had offered some evidence to support this dispute, plaintiffs failed to present any evidence to draw into question their interpretation of the phrase "professional, trained personnel."
 
 
 [12]
 As indicated earlier, see supra note 5, the district court relied most heavily on what appears to be a 1985 label, the most explicit in warnings and instructions. However, even the earlier versions of the labels used highly technical language in suggesting when respirators should be used. This supports the district court's conclusion that the labels were adequate enough to warn plaintiffs that they, untrained painters, should not have used the product
 
 
 [13]
 As earlier noted, the City was dismissed from the state court action on immunity grounds, which first left defendants able, on diversity grounds, to remove the state suit to federal court. The City cannot be sued in federal court because plaintiffs share the same citizenship with it. We express no opinion on the correctness of the state court's dismissal
 
 
 [14]
 Plaintiffs also contend that their wrongful death actions were improperly dismissed on statute of limitations grounds. They argue, similarly to their survival claims, that the statute of limitations was tolled by DuPont's fraudulent concealment. We note, however, that plaintiffs' wrongful death actions would also be subject to summary judgment based upon the product misuse defense