**Raymond J. DAVIS, Plaintiff,**

v.

**CUSTOMIZED TRANSPORTATION, INCORPORATED, Defendant.**

**No. 1:93CV0161.**

United States District Court,
N.D. Ohio,
Eastern Division.

April 18, 1994.

David E. Roloff, Gaines & Stern, Cleveland, OH, for plaintiff.

William J. O'Neill, McDonald, Hopkins, Burke & Haber, Cleveland, OH, Michael C. Towers, David R. Kresser, Fisher & Phillips,

Atlanta, GA and John T. Billick, Buckingham, Doolittle & Burroughs, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On February 3, 1992, Raymond J. Davis, plaintiff, filed the above captioned case against his former employer, Customized Transportation, Inc. (CTI), defendant, and The Goodyear Tire and Rubber Company (Goodyear) in the Court of Common Pleas, Cuyahoga County, Ohio. Plaintiff alleged that defendant CTI defamed him (Count I) and terminated his employment in violation of public policy (Count II), and that Goodyear tortiously interfered with his business relationship with CTI (Count III).

On January 20, 1993, Goodyear was dismissed as a defendant. On January 22, 1993, the case was removed pursuant to 28 U.S.C. §§ 1441 and 1446. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

On May 28, 1993, defendant filed a motion for summary judgment and a motion for sanctions. For the following reasons, the motion for summary judgment is granted and the motion for sanctions is denied.

## I.

On April 10, 1989, plaintiff Davis began employment as a truck driver with defendant CTI, a national trucking company. He was an at-will employee.

CTI has a contract with Goodyear to transport tires from its warehouses to its stores. Davis was employed at CTI's Brookpark, Ohio facility, which primarily services Goodyear.

Davis alleges that Mr. Frank Polk, his supervisor, repeatedly urged him to drive in excess of the maximum number of on-duty hours allowed under Federal Motor Carrier Safety Regulations. He further alleges that he refused to "run illegal" and that Mr. Polk would "just get upset, scream, and holler, cuss at [Mr. Davis, and] slam the phone."

Davis also alleges that he spoke with Mr. Mike McEvoy, CTI's Manager of Transportation Services, and Mr. John Cox, CTI's Safety Director, about Polk's demands, and was told that other drivers were doing a "good job" and that he should also do a "good job."

In November, 1989, McEvoy met with Davis and issued a formal warning letter concerning his behavior. McEvoy noted:

As stated, you have been unsubordinate (sic) on several occasions to your supervisor, Frank Polk. You have also shown a lack of concern for doing the professional job for which you were hired, by not communicating with your supervisor in a proper manner, having shortages while making deliveries, involving yourself with other drivers runs when it is of no concern to you and failing to treat our customer with proper respect.

On July 18, 1990, Mr. David McAfee, the manager of a Goodyear store in Wheeling, West Virginia, filed a written complaint about a CTI driver. Polk investigated the matter and based on McAfee's description, concluded that the driver was Davis. He contacted McEvoy, who told him not to dispatch Davis until he (McEvoy) returned from vacation and could investigate the matter.

Davis alleges that Polk informed him that he was terminated. Because McEvoy was on vacation, he contacted Cox who reinstated him pending investigation. Upon McEvoy's return, he converted the termination into a four-day suspension.

In September or October, 1990, Davis went to the Wheeling store and asked the store employees if he was the driver that they had complained about. He alleges that they assured him that he was not the driver. He shared this information with McEvoy and Cox and asked them to contact the store manager to clear his name.

On January 30, 1991, Davis made a delivery to an independently owned Goodyear store in Erie, Pennsylvania. As he was unloading the tires, he and Mr. Conway, the store's owner, got into an argument. Conway claimed that Davis "became rude and began yelling at me."

Davis and Conway contacted McEvoy by telephone. Conway told McEvoy that he was upset with Davis's attitude and that he did

not want Davis to continue to unload that day or ever to deliver at his store again.

Conway lodged a formal complaint with Mr. Jeff Carney, Corporate Goodyear's customer service manager. Carney contacted McEvoy and sent a letter stating:

> This is to confirm my conversation with you concerning your driver, Ray Davis.
>
> A formal complaint had been registered with me from John Conway of Conway & O'Mally. John expressed concern to me that this is not the first time someone in his organization has had a problem with Mr. Davis.
>
> I am asking your cooperation to see that situations of this nature cease with our customers.

On February 4, 1991, McEvoy called Davis and told him that because of the customer complaint, he (McEvoy) had no choice but to discharge him. Davis requested that McEvoy allow him to resign and McEvoy agreed and sent a letter confirming his resignation. McEvoy placed a handwritten note on his copy of the letter which states: "This letter follows my telephone conversation with Ray on this date in which I terminated him. He requested to resign instead."

CTI alleges that on February 12, 1991, Davis phoned Mr. Charles W. Petruska, CTI's director of human resources, and withdrew his resignation. Petruska prepared a handwritten memorandum of the conversation which states:

> Received call from Ray (he also called while I was at the annual meeting). He wants to withdraw his resignation; claims he is innocent. He said he would send proof. I told him I'd have to list his termination as dismissal based on his request.

Davis states that he requested reinstatement, but did not withdraw his resignation.

On February 20, 1991, CTI submitted a "Termination Report" on Davis to DAC Services, a clearing house for truck driver-applicant information. CTI stated that Davis was "Discharged" for "Company Policy Violation."

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The substantive law identifies which specific facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2513 (citing *Adickes v. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510.

## III.

As a preliminary matter, there is a question as to this court's subject matter jurisdic-

tion. Although neither party has raised this issue, a court must *sua sponte* dismiss a case in which it does not have subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3); *Billingsley v. C.I.R.*, 868 F.2d 1081, 1085, (9th Cir. 1989); Wright and Miller § 1393, at 772–73 (1990).

■ Although there is complete diversity between the parties and the proper amount in controversy,[1] this case was improperly removed from the state court. CTI removed the case pursuant to 28 U.S.C. § 1446(b)[2] after Goodyear, an in-state co-defendant, was dismissed by the state court judge. However, in *American Car & Foundry v. Kettelhake*, 236 U.S. 311, 314–16, 35 S.Ct. 355, 356, 59 L.Ed. 594 (1915), the Court held that cases with non-diverse and diverse parties become removable only if the plaintiff voluntarily dismisses the non-diverse parties. The voluntary/involuntary rule announced in *Kettelhake* survived the 1949 enactment of 28 U.S.C. § 1446(b). *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir.1992) ("Every court of appeals that has addressed the voluntary/involuntary rule has held that it survived the enactment of section 1446(b)").[3] Therefore, because Goodyear was dismissed by the state court judge and not by plaintiff, the dismissal was involuntary and removal was improper. Nevertheless, plaintiff did not file a motion to remand the case to state court.

■ Because there is complete diversity and the proper amount in controversy, this court has subject matter jurisdiction and can enter judgment regardless of the fact that the case was improperly removed. *See Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162 (4th Cir.1988); *Able v. Upjohn Co.*, 829 F.2d 1330 (4th Cir.1987), *cert. denied*, 485 U.S. 963, 108 S.Ct. 1229, 99 L.Ed.2d 429 (1988). In *Higgins*, the defendant improperly removed an action from state court after the state court judge dismissed a non-diverse co-defendant. *Higgins*, 863 F.2d at 1164. Later, the district court granted summary judgment for the diverse defendant and the plaintiff appealed. *Id.* On appeal, plaintiff raised the issue of improper removal for the first time. *Id.* at 1166. The Fourth Circuit affirmed the district court holding that:

> so long as jurisdiction is present at the time of judgment, that judgment must stand ... interests of finality and judicial economy also strongly suggest that the district court's judgment should not be disturbed where a party fails to avail himself of a remedy that might earlier have resolved the removal question.

*Id.*, citing *Able v. Upjohn Co.*, 829 F.2d 1330, 1333 (4th Cir.1987). Therefore, despite improper removal, this court has subject matter jurisdiction and can enter a summary judgment order.

### IV.

#### A.

Davis charges that CTI terminated his employment because he refused "to run illegal in violation of federal and state law." Specifically, Davis charges that his supervisor, Polk, requested that he drive in excess of the maximum number of driving hours allowable under the Federal Motor Carrier Safety Regulations,[4] and that he was discharged

---

1. Plaintiff is an Ohio resident and defendant is incorporated in Delaware and has its principal place of business in Florida.

2. 28 U.S.C. § 1446(b) states in part:
   If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable ...

3. In *Poulos*, the court explained that the voluntary/involuntary rule contributes to judicial economy:

> Removal following an involuntary dismissal may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court.

*Poulos*, 959 F.2d at 72.

4. The Federal Motor Carrier Safety Regulations were promulgated under the authority of the Surface Transportation Assistance Act of 1982, 49 U.S.C.App. § 2301 *et seq.* and are found at 49 C.F.R. § 395.3. They are incorporated by reference in Ohio Administrative Code Chapter 4901:2–5–02(A).

because he refused. In *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Court held that it is against public policy to discharge or discipline an at-will employee for a reason that is prohibited by statute. *Greeley,* 551 N.E.2d at 981 (syllabus 2).

■ CTI first argues that Davis's claim is preempted by Section 405 of the Surface Transportation Assistance Act of 1982 (STAA), 49 U.S.C. § 2305. An analysis under the Supremacy Clause of Article VI of the Constitution starts with the assumption that Congress did not intend to displace state law. *Maryland v. Louisiana,* 451 U.S. 725, 744–46, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981). However, state law may be preempted by a federal regulatory scheme if the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Gade v. National Solid Waste Management Association,* —— U.S. ——, ——, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992); *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

Section 405 of the STAA prohibits an employer from discharging, disciplining or discriminating against an employee in any way for refusing to operate a vehicle in violation of a federal rule or regulation. 49 U.S.C. § 2305(b). Section 405 also provides a remedy and an elaborate procedural framework for vindication of an employee's rights. 49 U.S.C. § 2305(c). An employee must file a complaint with the Secretary of Labor, who must investigate the claim and either deny it or take remedial action. *Id.* The Secretary can then seek civil enforcement of his orders in the District Court. 49 U.S.C. § 2305(e). Parties may only seek judicial review of the Secretary's decision in the appropriate Court of Appeals. 49 U.S.C. § 2305(d).

The STAA provides uniformity in safety regulations covering the interstate trucking industry. In *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987), the Court noted that the STAA reflects a "careful balancing of the relative interests of the Government, employee and employer." *Brock,* 481 U.S. at 259, 107 S.Ct. at 1746. The Court further noted that Section 405 of the STAA was designed to protect

trucking industry employees from unsafe working conditions and "assure that [trucking industry] employers are provided protection from unjustified refusal by their employees to perform legitimate assigned tasks." *Id.* at 263, 107 S.Ct. at 1748, *citing* 128 Cong.Rec. S32510 (1982) (Senate Commerce Committee Summary of Statute).

In *Norman v. M.S. Carriers, Inc.,* 741 F.Supp. 148 (W.D.Tenn.1990), the court held that the STAA preempted a state law claim that an employee was discharged for refusing to violate the Federal Motor Carrier Safety Regulations. *Norman,* 741 F.Supp. at 150. The court noted that the STAA is a comprehensive remedial provision and "[a]lthough there is no express language in the Act, ... Congress has implicitly confined jurisdiction over claims such as plaintiff's to the Secretary of Labor." *Id.* The court held that the procedural framework in Section 405 is the exclusive remedy for an employee's claim that he was discharged in retaliation for refusing to violate Federal Motor Carrier Safety Regulations:

> Congress has created a procedural framework for vindicating an employee's rights and has given the Secretary necessary discretion to make such a determination. Allowing parties to resort to other remedies ... would frustrate ... Congress' purpose. That being that the Secretary of Labor should decide whether an employee has been injured for failing to violate federal rules and regulations.

*Id.; But see Parten v. Consolidated Freightways Corporation,* 923 F.2d 580 (8th Cir. 1991) (holding that the STAA does not preempt Minnesota's statute prohibiting discharge of an employee for refusing to violate any law).

■ This court agrees with the holding of the district court in *Norman* that a state law claim involving a discharge in retaliation for an employee refusing to violate Federal Motor Carrier Safety Regulations is inconsistent with the procedural remedies and purpose of the STAA. Accordingly, the administrative procedure in Section 405 of the STAA provides the exclusive remedy for plaintiff's state law claim, and his claim is preempted.

■ Furthermore, Davis has not produced sufficient operative facts to support the alle-

gation that he was discharged because he refused "to drive illegal." McEvoy attests that he discharged Davis because of customer complaints, especially the complaint from Conway. CTI has discharged 16 other employees because of similar customer complaints, including 5 because of complaints lodged by Goodyear. In his deposition, Davis admitted that he was discharged because of customer complaints, and he does not produce sufficient operative facts to suggest pretext. Accordingly, summary judgment is appropriate on plaintiff's discharge in violation of public policy claim. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### B.

Davis also alleges that CTI defamed him by publishing to DAC that he was discharged for a company policy violation.

▮▮▮ Under Ohio law, false statements that tend to prejudice the person spoken of in his profession or employment are actionable for defamation if they are published to third parties and are not privileged. *See Hahn v. Kotten,* 43 Ohio St.2d 237, 331 N.E.2d 713 (1975). Ohio recognizes a qualified privilege for communications made in good faith on any subject in which the person communicating has an interest if made to a person having a corresponding interest and communicated in a proper manner. *See Jacobs v. Frank,* 60 Ohio St.3d 111, 573 N.E.2d 609 (1991); *Hahn,* 331 N.E.2d at 718. Generally, a communication made in good faith about a former employee to a prospective employer is protected by a qualified privilege. *See Evely v. Carlon Co.,* 4 Ohio St.3d 163, 447 N.E.2d 1290 (1983); *Rainey v. Shaffer,* 8 Ohio App.3d 262, 456 N.E.2d 1328, 1332 (Lake Cty.1983).

▮▮▮ A qualified privilege may be overcome by a showing of actual malice. *See Jacobs,* 573 N.E.2d at 610, syllabus 2. "Actual malice is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.*

▮▮▮ CTI charges that the statements made to DAC were true; Davis was dis-

charged for a company policy violation—mistreating a customer. Davis replies that he resigned and was not discharged, and that there is a factual dispute as to whether he withdrew his resignation. He also argues that CTI's statement was made with actual malice.

Davis argues that actual malice is demonstrated by CTI's handling of the Wheeling and Erie complaints. However, even if Davis was not on the "best of terms" with his employer, he has not produced sufficient operative facts to suggest that CTI acted with knowledge or with reckless disregard of the falsity of its statement. *Jacobs,* 573 N.E.2d at 616. Accordingly, summary judgment is appropriate on the defamation claim.

### V.

▮▮▮ On March 25, 1993, CTI sent a letter to Davis's counsel explaining the factual and legal defects in his claims and warning that it would seek sanctions pursuant to Fed. R.Civ.P. 11 if the action was not dismissed. Fed.R.Civ.P. 11 provides in pertinent part:

... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

In *Jackson v. Law Firm of O'Hara, Ruberg, et al.*, 875 F.2d 1224 (6th Cir.1989), the court explained the demands of Rule 11:

> Rule 11 imposes three obligations on the signing attorney. First, the attorney must conduct a reasonable inquiry to determine that the document is well grounded in fact. Second, the attorney must conduct a reasonable inquiry to determine that the positions taken are warranted by existing law or as good faith arguments for extension or modification of existing law. Third, the document must not be filed for any improper purpose.

*Jackson*, 875 F.2d at 1229. Attorney conduct is judged by "an objective standard of reasonableness under the circumstances." *Id.*, citing *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir.), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987).

Although Davis's operative facts are not sufficient to support his claims, this court does not find his factual or legal theories unreasonable under the circumstances. Accordingly, CTI's motion for sanctions is denied.

IT IS SO ORDERED.