Robert E. GERMANN, Plaintiff,

v.

VULCAN MATERIALS CO., CalMat Division d/b/a CalMat Concrete & Aggregate Division, a division of Vulcan Materials, an Alabama corporation d/b/a CalMat Company d/b/a CalMat Concrete; and Does 1 through 50, Defendant.

No. 00 CV 302 BTM (LAB).

United States District Court, S.D. California.

July 26, 2000.

Milton J. Silverman, Jr., Law Offices of Milton Silverman, San Diego, CA, for Plaintiff.

William Spencer Hamer, III, Musick, Peeler and Garrett, Los Angeles, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISMISS

MOSKOWITZ, District Judge.

This matter comes before the Court on plaintiff's motion to remand his case to the Superior Court of San Diego County and on defendant's motion to dismiss plaintiff's complaint. Defendant removed the case based on federal question jurisdiction, 28 U.S.C. § 1331, arguing that plaintiff's state law claim was an artfully pled cause of action arising under federal law. Concluding that removal jurisdiction is lacking, the Court grants plaintiff's motion to remand. Accordingly, the Court denies defendant's motion to dismiss.

## BACKGROUND

### A. *Factual History*

Plaintiff, Robert E. Germann, was a concrete mixer driver who was fired by defendant, CalMat Concrete ("CalMat"), on November 17, 1998. During his employment, in April of 1998, plaintiff notified CalMat management that its drivers were violating hours of service laws as set forth in the California Vehicle Code. Thereafter, plaintiff filed a complaint with the California Highway Patrol. As a result, CalMat convened a meeting of all drivers, and a representative of the California Highway Patrol explained the hours of service regulations. According to plaintiff, after this meeting, CalMat continued to direct its drivers to violate safety regulations. Because of his complaint to the state law enforcement authorities, plaintiff contends that his employment with CalMat was terminated.

### B. *Plaintiff's Complaint*

Pertinent to the issue facing the Court today are the specific allegations in plaintiff's complaint. Plaintiff raises a single cause of action against defendant for "Wrongful Termination in Violation of Public Policy." According to plaintiff, "[i]n terminating Mr. Germann's employment ... CALMAT acted in violation of strongly enumerated public policy as set forth in the California Vehicle Code Sections [34501.2] and Labor Code Sections 1102 and 6310." Generally, California Vehicle Code section 34501.2 provides maximum driving times within a work period for drivers of trucks. California Labor Code sections 1102 and 6310 prohibit employer retaliation for an employee's disclosure to the government or to law enforcement of suspected violations or noncompliance with federal or state law safety requirements. Plaintiff claims that he was fired by defendant in retaliation for reporting violations of state safety laws to the California Highway Patrol. Plaintiff's complaint, originally filed in the San Diego Superior Court, references only state law.

Defendant filed a timely notice of removal to federal court contending that plaintiff's claim for wrongful termination in violation of public policy was an artfully pled claim for relief under the Labor Management Relations Act ("LMRA"), the Surface Transportation Assistance Act ("STAA"), and the Occupational Safety and

Health Act ("OSHA"). Defendant insists that the LMRA, STAA, and OSHA preempt plaintiff's state law claim, and original jurisdiction of plaintiff's cause of action therefore lies in federal court. Plaintiff timely filed this motion to remand.

## DISCUSSION

### A. *Removal Jurisdiction*

A suit can be removed to federal court under 28 U.S.C. § 1441(b) if "the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States." A claim, however, cannot be removed to federal court if the federal claim is only a defense. *See Harper v. San Diego Transit Corp.,* 764 F.2d 663, 666 (9th Cir.1985). "Because preemption is ordinarily raised as a defense, preemption alone is an insufficient basis for removal." *Id.* If, however, federal law displaces state law and confers a federal remedy on the plaintiff, removal may be appropriate. *See id.*

■ Whether federal law displaces state law implicates the "well-pleaded complaint rule." "A plaintiff may not . . . avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law. Jurisdiction is determined on the well-pleaded complaint." *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1472 (9th Cir.1984), *overruled on other grounds, Allis–Chalmers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *see also Parrino v. FHP, Inc.,* 146 F.3d 699, 704 (9th Cir.), *cert. denied,* 525 U.S. 1001, 119 S.Ct. 510, 142 L.Ed.2d 423 (1998). In other words, if a federal cause of action completely preempts a state cause of action, any claim that falls within the scope of the federal law necessarily implicates federal jurisdiction. *See Franchise Tax Bd. v. Construction Laborers*

*Vacation Trust,* 463 U.S. 1, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Courts refer to complete preemption in the removal context as the "artful pleading" doctrine. A plaintiff cannot "artfully plead" a preemptive federal claim in state law terms to avoid jurisdiction of the federal court. *See Brennan v. Southwest Airlines, Co.,* 134 F.3d 1405, 1409 (9th Cir.1998); *Hyles v. Mensing,* 849 F.2d 1213, 1215 (9th Cir.1988). Claims falling into the artful pleading category are the exception; plaintiff is generally free to be the master of his complaint. *See Clinton v. Acequia,* 94 F.3d 568, 571 (9th Cir.1996). In fact, the Supreme Court has largely limited a finding of complete preemption to two federal statutes: the LMRA and the Employee Retirement Income Security Act, 29 U.S.C. § 1144(a) ("ERISA"). As Congress has never exercised the authority to occupy the entire field of labor law, the touchstone of federal preemption lies with the court's examination of congressional intent. *See Allis–Chalmers,* 105 S.Ct. at 1910. If Congress fails to indicate the extent to which it intends federal law to supplant state involvement, a court generally will allow regulation by the states. *See id.* at 1909–10 & n. 4. This Court must therefore determine whether plaintiff's complaint, alleging a single cause of action under California tort law, is an artfully pled federal claim preempted by either the LMRA, STAA, or OSHA.

### B. *The LMRA*

■ Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has concluded that in enacting section 301, Congress intended federal principles of labor law to prevail over *inconsistent* state principles. *See Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S.Ct.

571, 7 L.Ed.2d 593 (1962) (emphasis added). After a litany of litigation surrounding the preemptive effect of the LMRA, the Court has instructed that all common law claims that require interpretation of a collective bargaining agreement are completely preempted by section 301 of the LMRA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408, 410, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

Defendant argues that plaintiff's claim requires interpretation of the collective bargaining agreement (the "CBA") entered into between plaintiff, as a member of Teamsters Union Local 36, and defendant, as the employer. Defendants cite Article IV, paragraph T of the CBA, which it claims mandates preemption:

> Safety: All approved safety orders of federal and state regulatory agencies, including but not limited to, the federal Mine Safety and Health Administration (M.S.H.A.) and the state or federal Occupational Safety and Health Administration (O.S.H.A.), shall be observed by the employer and employee. Any employee found to be violating safety orders may be subject to disciplinary action including discharge. .

Defendant insists that this provision addresses a working condition subject to bargaining, and the CBA must be interpreted as part of plaintiff's claim. *See Schlacter-Jones v. General Tel.*, 936 F.2d 435, 441 (9th Cir.1991) (concluding that, because drug testing is subject to bargaining, determining liability would necessarily involve interpretation of the collective bargaining agreement). The Court disagrees.

The Ninth Circuit first addressed this issue in *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984). In *Garibaldi*, a former employee of defendant filed a suit alleging that he was wrongfully discharged in violation of California's public policy for reporting to local health authorities that he was instructed to deliver spoiled milk. *See id.* at 1368. The defendant removed the case to federal court, and the district court denied plaintiff's mo-

tion to remand, concluding that the LMRA preempted plaintiff's state law claim for wrongful termination. *See id.* at 1369. The Ninth Circuit reversed and remanded the case to state court, concluding that the LMRA did not completely preempt a state law claim for wrongful termination in violation of public policy because the claim "poses no significant threat to the collective bargaining process.... It furthers the state's interest in protecting the general public—an interest which transcends the employment relationship." *See id.* at 1375; *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 863 (9th Cir.1987) (concluding that wrongful discharge in violation of California public policy is not completely preempted by section 301 of the LMRA).

The Court is mindful that the *Garibaldi* decision predates the seminal Supreme Court case of *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), which was further clarified by *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Allis–Chalmers*, the Court expanded the breadth of section 301 of the LMRA and held that a state law tort remedy that is "inextricably intertwined" with consideration of terms of the labor contract will be preempted by provisions of the LMRA. *See Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904. In *Lingle*, the Court expounded on its holding in *Allis–Chalmers* and held that "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes." *Lingle*, 486 U.S. at 409–10, 108 S.Ct. 1877. As the state law remedy of retaliatory discharge did not require interpretation of the collective bargaining agreement, the *Lingle* Court held that plaintiff's claim survived complete preemp-

tion by section 301 of the LMRA. *See id.* at 407, 108 S.Ct. 1877.

The Ninth Circuit, post–*Allis–Chalmers* and *Lingle*, have applied these principles to reach similar conclusions. In an employee's wrongful termination suit after testing positive during an employer-mandated drug test, the court concluded that determining liability will necessarily involve interpretation of the labor contract. *See Schlacter–Jones,* 936 F.2d at 441. The court explained that "[w]hen a working condition is subject to bargaining, ... the claim will be preempted [by section 301 of the LMRA]." *Id.* Conversely, the court declined to hold that the LMRA completely preempted a claim under a California statute that requires an employer to pay a discharged employee no more than 24 hours after discharge. *See Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1111 (9th Cir.2000). The court explained, "[w]ere we to extend the § 301 preemption doctrine to allow for preemption by virtue of such a waiver, 'parties would be able to immunize themselves from suit under state-laws of general applicability by simply including their unlawful behavior in a labor contract.'" *Id.* (quoting *Associated Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers,* 109 F.3d 1353, 1357 (9th Cir. 1997)); *see also Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 749 (9th Cir. 1993) (reaffirming the court's precedent that rights conferred by the California Employment Act, which prohibits various forms of discrimination, are not completely preempted by section 301).

■ The Court concludes that plaintiff's action for wrongful termination in violation of California's public policy is sufficiently independent of the CBA such that section 301 preemption does not apply. California created a claim for violations of public policy in *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980), when the court held that an "employer cannot condition employment upon required participation in unlawful conduct by the employee." *Id.* at 178, 164 Cal.Rptr. 839, 610 P.2d 1330. This state law tort has been recognized as a non-negotiable state law right, which applies to unionized and non-unionized employees alike. *See Paige,* 826 F.2d at 861. Although the existence of a non-negotiable state law right does not ensure non-preemption by section 301, *see Lingle,* 486 U.S. at 407 n. 7, 108 S.Ct. 1877, it is certainly a factor for the court to consider. *See Balcorta,* 208 F.3d at 1111. Indeed, courts have consistently recognized California's unwavering public interest, regardless of the employment relationship, in prohibiting retaliatory discharge for reporting safety and health considerations. *See, e.g., Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1093 (9th Cir.1990); *Paige,* 826 F.2d at 863; *Garibaldi,* 726 F.2d at 1374.

The Court's holding today is consistent with the Ninth Circuit's opinion in Garibaldi, which survives the dictates of *Allis–Chalmers* and *Lingle.* Indeed, the *Garibaldi* court recognized that plaintiff's claim was a function of the *manner* in which the conduct was exercised, rather than a function of the *conduct itself,* the latter of which implicates the collective bargaining agreement. *See Garibaldi,* 726 F.2d at 1374. Such recognition is consistent with the illustration posed by the *Lingle* court:

> The operation of the anti-discrimination laws ... illustrate the relevant point for § 301 preemption analysis that the mere fact that a broad contractual provision [in the collective bargaining agreement] against discriminatory—or retaliatory discharge may provide a remedy for conduct that coincidentally violates state law does *not* make the existence of the contours of the state law violation dependent upon the terms of the private contract.

486 U.S. at 412–13, 108 S.Ct. 1877 (emphasis added); *see also Balcorta,* 208 F.3d at 1108 (noting the difference between claims that require interpretation or construction of a labor agreement and those that re-

quire a court simply to "look at" the agreement).

In this case, the CBA simply requires all employees and the employer to observe relevant safety laws and cautions any employee against violating federal or state safety provisions at the risk of disciplinary action, including discharge. The factual inquiries surrounding the manner of plaintiff's discharge will not require construing the CBA. Indeed, in a retaliatory discharge claim, the conduct of the employee and the conduct and motivation of the employer will be paramount to assessing liability. *See Lingle*, 486 U.S. at 407, 108 S.Ct. 1877. The Court therefore concludes that plaintiff's state law claim is not an artfully plead federal claim preempted by section 301 of the LMRA.

## C. *STAA*

Whether plaintiff's claim is an artfully pled federal claim under the STAA poses a bit simpler question. The STAA provides safety regulations covering the interstate trucking industry. *See* 49 U.S.C. §§ 31101–31162. The STAA makes it illegal for an employer to take adverse action against an employee who has refused to violate a regulation, standard, or order of the United States related to commercial motor vehicle safety or health. *See Id.* § 31105(a). Defendant claims that the STAA is a "comprehensive remedial statute designed by Congress to govern the entire field of commercial motor safety." Defendant's contention, however, is contradicted by the legislative history of the Act.

■ Although the Ninth Circuit has yet to consider the preemptive effect of the STAA, transcripts of the Congressional hearings provide the Court with valuable guidance. During the congressional hearings, Senator Charles Percy expressed his concern surrounding the preemptive effect of the STAA over "other avenues of relief and remedies that might be available to employees under union contracts, or statutory or common law." S.Cong.Rec. 32511, December 19, 1982. Senator John Dan-

forth, the principal author of the STAA answered that "[t]he driver protection provisions of title IV are most certainly intended to strengthen, not displace, any existing remedies employees may have at law." *Id.* It is clear from these excerpts that the STAA was not enacted to completely preempt state law remedies for retaliation against an employee who refuses to violate safety provisions. *See Todd v. Frank's Tong Service, Inc.*, 784 P.2d 47, 49–50 (Okla.1989) (noting that Congressional intent surrounding enactment of the STAA demonstrates that state law claims are not preempted); *see also Parten v. Consolidated Freightways Corp.*, 923 F.2d 580, 583 (8th Cir.1991) (concluding that the Minnesota public policy statute was not an obstacle to the STAA and that Congress did not intend to occupy the entire field of interstate motor carriers); *Whitworth v. TNT Bestway Transp., Inc.*, 914 F.Supp. 1434, 1436 (E.D.Tex.1996) (holding that Texas Whistleblower's Act was not preempted by the STAA); *Dobberowsky v. Cryogenic Transp., Inc.*, 989 F.Supp. 848, 853 (E.D.Mich.1997) (denying removal jurisdiction on the basis of the STAA for claims under the Michigan Whistleblowers Act).

To the extent that other courts have found the STAA to be the exclusive remedy for employees who refuse to violate commercial motor safety regulations, the Court disagrees with these holdings, which did not rely on the clear intent of Congress as expressed by the drafters of the STAA. *See, e.g., Norman v. M.S. Carriers, Inc.*, 741 F.Supp. 148, 150 (W.D.Tenn.1990) (concluding that the STAA preempted a state law claim of conspiracy to violate motor carrier regulations); *Davis v. Customized Transp., Inc.*, 854 F.Supp. 513, 518 (N.D.Ohio 1994) (agreeing with *Norman*). As Congress did not intend federal law to supplant parallel state law actions in the area of commercial motor vehicle regulation, the Court concludes that plaintiff's claim is not an artfully pled federal claim preempted by the STAA.

### 3. *OSHA*

■ Defendant's makes the final contention that plaintiff's claim is an artfully pled federal claim under OSHA. This claim is wholly without merit, as OSHA contains a provision that allows individual states to regulate health and safety, provided the states adopt a scheme of regulation and enforcement at least as vigorous as that required under the Federal scheme. *See* 29 U.S.C. § 667 (1982). Indeed, if plaintiff's claim falls within the ambit of OSHA, as argued by defendant, California's state law enactment of OSHA would apply. *See* Cal. Labor Code § 6300 *et seq.* As Congress has articulated the state's ability to regulate occupational safety and health laws, the Court concludes that plaintiff's claim is not an artfully pled federal claim preempted by OSHA.

### CONCLUSION

Overarching the doctrine of removal jurisdiction is the principle that federal courts are courts of limited jurisdiction. Within the body of law addressing removal jurisdiction are concepts of federal preemption, the conceptual lines of which are often blended with principles of removal. In distinguishing between the two, the Supreme Court has explained, "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted does not establish that they are removable to federal court." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 398, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

For the reasons expressed above, the Court concludes that plaintiff's state law claim for wrongful termination in violation of public policy is not essentially a federal claim under the LMRA, STAA, or OSHA. As master of his complaint, plaintiff sought relief under a state law cause of action only. Plaintiff's motion to remand the case to state court [6–1] is therefore GRANTED. Under its discretion, the Court denies plaintiff's request for costs and fees associated with defendant's removal petition. Defendant's motion to dismiss [3–1] is DENIED without prejudice. This case is REMANDED to the Superior Court of the State of California, County of San Diego.

**IT IS SO ORDERED.**