**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PHYLLIS LONEY, Administratrix of
the estate of Marco Antoine Loney,
deceased,
<u>Plaintiff-Appellant,</u>

v.

JEFFREY E. MILES,
<u>Defendant-Appellee,</u>

No. 98-2826

and

OTHER UNKNOWN POLICE
OFFICERS OF THE CITY OF RICHMOND;
DOROTHY REYNOLDS; JERRY A.
OLIVER, Colonel, Chief of Police;
PAUL C. TUTTLE, a Detective,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-97-641-3)

Argued: January 24, 2000

Decided:  May 3, 2000

Before MICHAEL and TRAXLER, Circuit Judges, and
John T. COPENHAVER, Jr., United States District Judge
for the Southern District of West Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Thomas Hunt Roberts, THOMAS H. ROBERTS & ASSOCIATES, P.C., Richmond, Virginia, for Appellant. Earle Duncan Getchell, Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:** John M. Oakey, Jr., Henry M. Massie, Jr., F. Brawner Greer, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Phyllis Loney, as administratrix of the estate of Marco Antoine Loney, brought this suit under 42 U.S.C. § 1983 alleging that Officer Jeffrey Miles used excessive force when he fatally shot Marco Loney on August 24, 1995. Because Ms. Loney did not proffer sufficient evidence to raise a disputed issue of material fact, we affirm the district court's grant of summary judgment to Officer Miles on the grounds of qualified immunity.

I.

Sometime after midnight on August 24, 1995, a City of Richmond police officer pulled over a car carrying Marco Loney and three other men. The officer called for assistance, and four other officers, including Officer Jeffrey Miles, responded. The police ordered the men out of the car, and two of the occupants fled. Officer Miles pursued one of them (a man in an orange tee shirt).

Officer Miles and Phyllis Loney present conflicting versions of what happened next. Miles's version is as follows. The man in the

2

orange shirt slipped on a handicapped ramp while he was running. As the man slipped, Officer Miles "saw an object fall to the ground which appeared . . . to be an ammunition clip from a handgun." The officer therefore believed the man had a gun. As the pursuit continued, Officer Miles yelled, "Police, Stop." Miles saw the man bring both his left and right arms in close to his body and appear to reach into the waistband of his pants. Miles then heard someone yell, "he has a gun." The man glanced at Miles over his right shoulder and continued to run. Next, the fleeing man appeared to reach once again into the waistband of his pants with his right hand. When the man "brought his right arm up and out and turned his head and upper body to his right," Miles "believed he had a weapon and was preparing to shoot." Officer Miles then fired once, killing the man who turned out to be Marco Loney.

Phyllis Loney originally presented the affidavits of four witnesses to support her version of the events. One of these witnesses, Timothy West, did not actually see Loney being shot. Two of the other witnesses, Keith Blount and Harrison Randolph Burton, could not be located for depositions. (Ms. Loney admits that their whereabouts are unknown.) In their affidavits Blount and Burton had presented similar versions of events. They both testified that they saw Loney walk between the houses on Grace Street, turn to the left (to the East), and then take about three steps. Loney then saw the officer. Loney immediately raised his shoulders and put his arms over his head. According to the affidavits, Loney appeared to realize that he had been caught and said something like, "Oh God." Then, with his hands in the air, Loney turned around and away from the officer. At that point, Blount and Burton said, Miles shot Loney in the back.

The remaining eyewitness, Argusta Watson, Jr., signed two affidavits that contradicted each other. And, Watson later gave deposition testimony that contradicted his affidavits. On September 6, 1995, Watson signed his first affidavit, presenting a version of events similar to that given by Blount and Burton. Watson stated that Loney walked between the houses and into view, and then he took a couple of steps to the East on Grace Street. Then, "[a]s soon as Loney saw the police officer, Loney raised both hands." Watson said that it appeared that Loney had given up. Finally, "[w]ith his hands in the

3

air, Loney turned around and after he completed his turn, the officer shot him in the back."

Watson changed his account in a supplemental affidavit given on August 12, 1998. Watson no longer stated that Loney had come from between the houses. Instead, he stated that "Loney stepped out from the side of my building and was heading East on the North side of West Grace Street." Watson continued his version of subsequent events, stating, "[w]hen Marco Loney saw the officer, he stated `Oh, my God,' and raised both hands into the air with one towards his fore-head, and turned his back to the officer, at which time he was shot."

Watson's September 3, 1998, deposition further contradicted his earlier version of the story. Watson admitted that he actually did not know where Loney came from:

Q: Do you know where he came from?

A: Well, from what I'm predicting, he might have came from the side of the building, or something, but--

Q: I mean, do you know?

A: On, no. No.

Watson also admitted that he didn't know whether Loney was shot before or after he turned around:

Q: Well, now, here's the question: Do you know if he had been shot before he turn [sic] around?

A: That, I don't know.

Q: That you don't know?

A: That, I don't know.

Finally, Watson admitted that he was looking at Officer Miles when the gun went off and that he did not observe Loney's actions before the gunshot:

4

Q: When you heard the gun shot, you were looking at the police officer . . .?

A: Okay. Yes.

Q: You were looking at the police officer?

A: Yes.

Q: Had you already seen Loney before that?

A: Well, before what?

Q: Before you heard the gun shot. Do you know?

A: Oh, boy. (Pause). <u>No</u>. Like I say, he just popped out of nowhere, and then there was a gun shot.

(Emphasis added.)

Phyllis Loney also presented the autopsy report which stated that the bullet that killed Loney passed from back to front, very slightly left to right, and slightly upward. No gun was found near Loney's body.

The district court granted Officer Miles's motion for summary judgment on qualified immunity grounds, noting no genuine dispute about "Officer Miles's perception that Mr. Loney was reaching to pull a weapon from his waistband." Ms. Loney appeals.

II.

We review de novo a district court's grant of summary judgment based on qualified immunity. <u>See Higgins v. E.I. DuPont de Nemours & Co.</u>, 863 F.2d 1162, 1167 (4th Cir. 1988). It is well-established that the party moving for summary judgment bears the initial burden of demonstrating the absence of any disputed material facts. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by her own affida-

5

vits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted).

Qualified immunity shields police officers from § 1983 liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A claim that a police officer used excessive force in attempting to make an arrest is analyzed under a Fourth Amendment reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). Force is not excessive if it is objectively reasonable under the circumstances facing the officer. See id. at 397. When assessing the reasonableness of force, we look to the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. In this deadly force claim, the material facts are those that address whether Officer Miles's actions were objectively reasonable under the circumstances.

The affidavits of Keith Blount, Harrison Randolph Burton, and Timothy West do not satisfy Loney's burden of showing a material dispute warranting trial. Affidavits submitted at summary judgment must "set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). As Phyllis Loney admitted, Blount and Burton cannot be found. We must therefore conclude that they would not be available to testify at trial concerning the factual statements made in their affidavits. Since no exception to the hearsay rule would allow the admission of the Blount and Burton affidavits at trial, we may not consider the affidavits at the summary judgment stage. See Maryland Highways Contractors Ass'n, Inc. v. State of Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991) (noting that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"). West's affidavit also does not satisfy Loney's burden. West cannot speak to the material facts because he did not see Loney being shot.

Because Argusta Watson's deposition thoroughly contradicts his earlier affidavits, he also does not create an issue of material fact. At

6

summary judgment we must construe the facts in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Nevertheless, we may disregard an affidavit that is inherently inconsistent with deposition testimony. See Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975-76 (4th Cir. 1990) (disregarding witnesses's affidavit that contradicted his deposition testimony); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). Watson's deposition repudiated his earlier affidavits to such a degree that the earlier statements should be disregarded. In the end, the deposition revealed that Watson was looking at Officer Miles when the gun went off and that Watson did not observe Loney's actions before the officer fired his gun. Accordingly, Watson does not offer any material facts regarding the reasonableness of Officer Miles's perceptions and actions. In short, Watson's testimony is insufficient to create a dispute of material fact.

Finally, we reject Ms. Loney's suggestion that the autopsy report is sufficient to create a material issue of fact about Officer Miles's account of the events. Miles stated that Marco Loney "brought his right arm up and out and turned his head and upper body to his right." At that point, Miles "believed that [Loney] had a weapon and was preparing to shoot." Then, Miles "fired [his] weapon once." The autopsy report stated that the bullet traveled from back to front, very slightly left to right, and slightly upward. Ms. Loney now argues that an autopsy report consistent with Miles's account would have a shown a bullet traveling from right to left, instead of very slightly left to right. On the record before us, however, we cannot say that the autopsy report is inconsistent with Miles's account. Neither party presents any evidence about Miles's precise location (or his angle from Marco Loney) when the shot was fired. As a result, we cannot say that Miles's account suggests a bullet path that is inconsistent with the autopsy report.

For these reasons, the judgment of the district court is

AFFIRMED.

7