923 F.2d 849
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ricardo ROSAS, Plaintiff-Appellant,
v.
Michael P.W. STONE, Secretary of the Army, Defendant-Appellee.
 No. 90-3031.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 3, 1990.
Decided Jan. 25, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CA-87-842-HAR)
 Jules Fink, Silver Spring, Md., for appellant.
 David Paul King, Assistant United States Attorney, Baltimore, Md., (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Gregg L. Bernstein, Assistant United States Attorney, Baltimore, Md., on brief.
 D. Md.
 VACATED AND REMANDED.
 Before MURNAGHAN and WILKINS, Circuit Judges, and FREDERICK P. STAMP, Jr., United States District Judge for the Northern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Ricardo Rosas brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Secs. 2000e, et. seq. (West 1981), alleging that the United States Army discriminated against him on the basis of national origin in its termination of his civil employment. The district court granted summary judgment for the Secretary of the Army. We hold that summary judgment was not appropriate because the evidence before the court raised a genuine issue of material fact about whether Rosas' termination was discriminatorily motivated. The district court order is vacated and this case is remanded for further proceedings.
 
 I.
 
 2
 Rosas, a Hispanic, was an Army employee at Aberdeen Proving Ground, Maryland. He went on a business trip to Jennerstown, Pennsylvania, with two non-Hispanic co-employees, Donald S. Ricketts, Jr. and Eugene E. Atkinson. Although their motel expenses were $59.36 per week, each of the three men submitted fraudulent travel reimbursement vouchers to the Army claiming $192.92 per week. While Atkinson and Ricketts, as well as a number of other non-Hispanic employees, had engaged in this illegal activity for some time, this was the first occasion that Rosas participated in the fraud.
 
 
 3
 Viewing the facts in a light most favorable to Rosas, the record demonstrates that after the Criminal Investigation Division alerted Rosas' supervisor, Chief Nobel W. Hall, about the conspiracy, Hall conducted interviews with the three employees on May 13, 1985. Despite prior warnings that his failure to answer could result in his termination, Rosas answered "no comment" to some of the questions by Hall. Rosas later explained that by "no comment" he meant that he did not know the answer to the questions and that he did not want to lie. Atkinson did lie in response to at least one question by Hall concerning whether the travel vouchers Atkinson submitted were correct. Rosas refused to sign an "Explanation of Rights" form granting him immunity from prosecution for his answers and warning him that failure to answer could be grounds for termination. Atkinson signed this form.
 
 
 4
 On June 21, 1985 Hall issued documents entitled "Notice of Proposed Adverse Action" recommending that Rosas and Atkinson be terminated.[1] Hall found that the proposed termination of Rosas was based upon his submission of fraudulent travel vouchers and his failure to answer questions in the interview. Hall based Atkinson's proposed termination solely upon his presentation of fraudulent travel vouchers. The notices advised the recipients of their right to respond in person or in writing to Colonel Ronald V. Hite.
 
 
 5
 Atkinson met with Colonel Hite, confessed to the fraud, and gave him the names of other employees involved in similar misconduct. Rosas elected to respond to the notice in writing rather than meeting personally with Hite. Rosas' letter acknowledged his guilt, attempted to explain his actions, and requested a more lenient disciplinary action.
 
 
 6
 On July 22, 1985 Hite issued his final decision ordering the termination of Rosas. This decision was purportedly based upon the fact that Rosas committed fraud and failed to answer questions during his meeting with Hall. Rather than terminate Atkinson, Hite imposed a 30-day suspension. The other six employees involved in the conspiracy were either suspended for short periods or demoted. Only Rosas was terminated.
 
 
 7
 Granting the Secretary's motion for summary judgment, the district court found that the reasons advanced by the Secretary for Rosas' termination were facially nondiscriminatory. Further, the court ruled that Rosas failed to raise an issue of fact as to whether these reasons were pretextual.
 
 II.
 
 8
 In determining whether a showing sufficient to survive summary judgment has been made, the underlying facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). A party opposing summary judgment has raised a genuine issue of material fact when "the record taken as a whole could ... lead a rational trier of fact to find for the non-moving party." Id. This court reviews a grant of summary judgment de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162 (4th Cir.1988).[2]
 
 
 9
 Rosas was permitted to establish a prima facie case of discrimination by showing he "engaged in prohibited conduct similar to that of a person of another ... national origin, and ... that disciplinary measures enforced against [him] were more severe than those enforced against the other person." Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105-06 (4th Cir.), cert. denied, 472 U.S. 1021 (1985). Since Rosas was the only employee to be discharged, he has shown that he suffered a more severe disciplinary action than the other employees involved in the fraudulent scheme. Atkinson's misconduct, viewed in the light most favorable to Rosas, was at least as egregious as Rosas' misconduct.[3] Rosas carried his burden by producing evidence sufficient to create an issue of material fact on his prima facie case.
 
 
 10
 The burden then shifted to the Secretary to demonstrate that Rosas was fired for a nondiscriminatory reason. See id. at 1105. The Secretary offered three reasons for having treated Atkinson more favorably than Rosas: Atkinson met with Hite personally, assisted in the investigation by exposing others involved, and offered to make restitution. These reasons are facially nondiscriminatory, so the burden of proof shifted back for Rosas to attempt to create an issue of fact as to whether the explanations given by the Secretary were pretextual. See id.
 
 
 11
 Viewed in the light most favorable to Rosas, the evidence is sufficient to raise an issue of fact as to whether the reasons articulated by the Secretary were in fact a pretext for discrimination. The first reason advanced by the Secretary is questionable. The notice of proposed employment action informed Rosas of his right to reply to the notice and of two equally appropriate methods for making this reply--by meeting or by letter. Rosas argued that pretext is evident from the attempt by the Secretary to penalize him for exercising one of two options which were presented to him as equally acceptable. The second reason the Secretary advanced for Rosas' termination was Atkinson's assistance in the investigation. Rosas, however, presented evidence that he, unlike Atkinson, did not have knowledge of the others involved in the scheme because he was a neophyte participant. Rosas revealed the extent of his knowledge concerning the fraud in his reply letter to Hite. Since Rosas did not have any other information to give to the authorities, the Secretary's use of Atkinson's assistance as a distinguishing basis for Rosas' termination at least raises a genuine issue regarding pretext. In rebutting the Secretary's third reason, that Rosas failed to make restitution, Rosas argued that because he did not receive an expense reimbursement check, he did not retain any illegal proceeds from the scheme and thus had nothing to restore.
 
 
 12
 In its current posture, the issue before the court is solely whether Rosas has raised an issue of fact concerning whether his termination was discriminatorily motivated. While we express no opinion on the merits of Rosas' case, we find that the evidence before the court precludes summary judgment. We remand for additional proceedings.
 
 
 13
 VACATED AND REMANDED.
 
 
 
 [1]
 The third employee, Ricketts, resigned in the wake of the investigation prior to circulation of the notices
 
 
 [2]
 Relying upon Pullman-Standard v. Swint, 456 U.S. 273 (1982), the Secretary argues that the order of the district court may be reversed only if we determine the findings by the district court were clearly erroneous. Pullman-Standard held that factual findings by the district court concerning intent to discriminate may not be reversed unless clearly erroneous. This standard applies, however, only after the district court has made factual findings under Federal Rule of Civil Procedure 52. Because this matter was before the district court on cross motions for summary judgment, the district court made no factual findings. The issue before the district court was whether, viewing the evidence in the light most favorable to the other, either party was entitled to judgment as a matter of law
 
 
 [3]
 The record does not disclose whether the conduct of the six other non-Hispanic employees who were involved in the fraudulent scheme was comparable to that of Rosas. This fact prevents us from including them in the comparison to Rosas for purposes of summary judgment