**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CATAWBA INDIAN TRIBE OF SOUTH
CAROLINA, a/k/a Catawba Indian
Nation,
<u>Plaintiff-Appellant,</u>

v.                                                                    No. 99-2177

CITY OF NORTH MYRTLE BEACH;
HORRY COUNTY; STATE OF SOUTH
CAROLINA,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-97-3000-4-22)

Argued: May 1, 2000

Decided: June 15, 2000

Before MURNAGHAN, WILKINS, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Henrietta Urbani Golding, BELLAMY, RUTENBERG,
COPELAND, EPPS, GRAVELY & BOWERS, P.A., Myrtle Beach,
South Carolina, for Appellant. Andrew Frederick Lindemann,

DAVIDSON, MORRISON & LINDEMANN, P.A., Columbia, South Carolina; Michael Warner Battle, Sr., BATTLE & VAUGHT, P.A., Conway, South Carolina, for Appellees. **ON BRIEF:** Howell V. Bellamy, Douglas M. Zayicek, Mary Anna Malpass, BELLAMY, RUTENBERG, COPELAND, EPPS, GRAVELY & BOWERS, P.A., Myrtle Beach, South Carolina, for Appellant. Charles M. Condon, South Carolina Attorney General, Kenneth P. Woodington, Senior Assistant Attorney General, Columbia, South Carolina, for Appellee South Carolina.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Catawba Tribe of South Carolina, a/k/a Catawba Indian Nation (the Catawba Tribe or the Tribe) filed suit in the United States District Court for the District of South Carolina against the City of North Myrtle Beach (the City) and Horry County (the County) (collectively, Defendants). The Catawba Tribe's complaint sought both damages arising out of Defendants' alleged deprivation of the Tribe's right to operate a high-stakes bingo facility in their jurisdiction and declaratory relief as to the meaning of the term "approval" in the statute governing the Tribe's location of such a facility in South Carolina. The district court dismissed the Tribe's claims for monetary relief as unripe and granted Defendants' motions for summary judgment on the Tribe's claim for declaratory relief. The Tribe filed a timely notice of appeal. Finding no error, we affirm.

I.

In August 1992, the State of South Carolina and the Catawba Tribe entered into an "Agreement in Principle" to settle the Tribe's claims to 144,000 acres of land in South Carolina (the Claim Area).[1] Follow-

_____

[1] For an extended discussion of the historical background of the Agreement in Principle, see district court order of July 30, 1999 at 2-6.

2

ing additional negotiations to refine the terms of the settlement agreement, the parties entered into a revised Agreement in Principle. The revised Agreement in Principle was subsequently amended by the South Carolina General Assembly and enacted as the Catawba Indian Claims Settlement Act (the Settlement Act), S.C. Code Ann. §§ 27-16-10 to -140 (Law. Co-op. Supp. 1998). On June 14, 1993, then-South Carolina Governor Carroll Campbell signed the Settlement Act into law. On October 27, 1993, the United States Congress enacted a federal implementing statute entitled The Catawba Indian Tribe of South Carolina Land Claims Settlement Act of 1993, which ratified and adopted the Agreement in Principle and the state implementing legislation.

Of relevance to this case, the Settlement Act provides that the Catawba Tribe may apply to the South Carolina Department of Revenue for a special bingo license that would permit the Tribe to conduct the game of high-stakes bingo up to six days a week and award cash prizes of up to $100,000 per game. See S.C. Code Ann. § 27-16-110(C) (Law. Co-op. Supp. 1998). The statute entitles the Catawba Tribe to two bingo licenses at two separate locations. See S.C. Code Ann. § 27-16-110(C)(5). Section 27-16-110(D) provides that if the Tribe elects to operate one of the high-stakes games off the Tribe's Reservation and outside the Claim Area, it "first must obtain the approval of the governing authority of the county and any municipality in which it seeks to locate the facility." S.C. Code Ann. § 27-16-110(D) (Law. Co-op. Supp. 1998). In contrast, if the Tribe decides to operate one or both of the games off the Reservation but inside the Claim Area, "it shall do so in an area zoned compatibly for commercial activities after consulting with the municipality or county where a facility is to be located." Id.

After voting to authorize bingo, the Catawba Tribe preliminarily decided to locate and operate a bingo facility in North Myrtle Beach, which is outside of the Claim Area, after confirming that the desired site was located in a zoning district that already considered regular bingo a permissible use. After the Horry County Council learned of the Tribe's intentions, it passed a non-binding resolution stating that the Council "strongly opposes the location of mega bingo-parlors' in Horry County." (J.A. at 1163.) On June 4, 1996, the County Council rescinded the resolution and expressed "its approval of the project as

3

outlined by the Catawba Indian Nation at the May 28, 1996, work-shop of Horry County Council." (J.A. at 1170.) At approximately the same time that the Horry County Council expressed its approval of the Tribe's project, the Tribe outlined its plans for opening a bingo facility in North Myrtle Beach to the North Myrtle Beach City Coun-cil. After holding several hearings and workshops on the issue, the City Council voted on March 17, 1997 to reject the Tribe's proposal to locate and operate a high-stakes bingo facility in North Myrtle Beach. On August 19, 1997, Gregory Hembree, an attorney for the City of North Myrtle Beach, wrote a letter to John C. Stewart, Jr., an attorney representing the Catawba Tribe, to inform him that

> the City will not issue a business license for the facility to operate games permitted under the special bingo license unless and until the Catawba Indian Nation has been granted a special bingo license by the South Carolina Tax Commis-sion and the North Myrtle Beach City Council has granted the required approval.

(J.A. at 1249.)

In response to the City's refusal to approve the proposed bingo facility and issue the requisite business license, the Catawba Tribe brought the instant suit in October 1997, seeking both money dam-ages arising out of Defendants' alleged deprivation of the Tribe's right to operate a high-stakes bingo facility in their jurisdiction and declaratory relief as to the meaning of the term"approval" in § 27-16-110(D). The County filed a motion for summary judgment and the City filed a motion to dismiss. After conducting a hearing on these motions, the district court issued an order on December 30, 1998 holding that the Tribe's claim for declaratory judgment was ripe for adjudication and dismissing the Tribe's claims for monetary relief as unripe. The County and the City subsequently filed motions for sum-mary judgment and the Catawba Tribe filed a cross-motion for sum-mary judgment, limited to the issue of the meaning of the term "approval" in S.C. Code Ann. § 27-16-110(D).**2** The Tribe took the

_____

**2** The State of South Carolina (the State) intervened with respect to the constitutionality of the statute and filed a memorandum in support of summary judgment in which it adopted the arguments made by the City on the constitutional issues. The State, therefore, is a party to this appeal.

4

position that the term "approval" merely requires compliance with local zoning and business licensing ordinances, while the City argued that "approval" conveys broad discretionary authority to the local governing body to allow or disallow a high-stakes bingo facility within its jurisdiction.**3**

By order of July 30, 1999, the district court granted Defendants' motions for summary judgment and denied the Tribe's cross-motion for summary judgment. First, the district court concluded that based upon the plain meaning of the words used, the context of the words in the section, and the overall statutory scheme, the term "approval" in § 27-16-110(D) granted the City and the County governing bodies discretionary authority to allow or disallow the Catawba Tribe's request to locate a high-stakes bingo facility within their jurisdiction. The district court subsequently rejected the Tribe's contention that this interpretation would render the statute unconstitutional. The district court reasoned that this interpretation did not violate the Equal Protection Clause because no other entity in South Carolina besides the Tribe possessed the authority to operate a high-stakes bingo facility and because granting discretionary authority to the governing bodies of the City and the County was rationally related to the legitimate government purpose of addressing concerns related to "megabingo." The district court also concluded that this interpretation did not violate the Indian Commerce Clause because the federal implementing legislation expressly delegated regulatory authority over the Tribe's gambling operations to the State of South Carolina and its political subdivisions and because Indians going beyond reservation boundaries are generally subject to nondiscriminatory state law otherwise applicable to other state citizens. Finally, the district court found that this interpretation did not violate the Tenth Amendment because giving local governments discretion to allow or disallow high-stakes bingo was consistent with state sovereignty.

The Catawba Tribe filed a timely notice of appeal. Before us, the Tribe sets forth the same arguments it made before the district court. First, the Tribe asserts that the district court erred in granting summary judgment to Defendants because the term "approval" merely

_____

**3** Both the County and the State agreed with the City's interpretation of the term "approval."

5

requires compliance with any zoning regulations and other ordinances regulating bingo establishments enacted by a local county or municipality. Next, the Tribe contends that the definition of the term "approval" in S.C. Code Ann. § 27-16-110(D) adopted by the district court renders the statute violative of the Equal Protection Clause, the Indian Commerce Clause, and the Tenth Amendment. Finally, the Tribe argues that the district court erred in dismissing the Tribe's claim for money damages as unripe because the Tribe lost substantial amounts of income as a result of the City's prohibition of the Tribe's operation of a bingo establishment authorized by the Settlement Act.

II.

Summary judgment is appropriate if "`the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Although "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), in order to survive summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]," id. at 252. We review a grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). We also exercise de novo review over a district court's dismissal of a complaint for failure to meet the constitutional requirement of a "case or controversy," such as a dismissal for lack of ripeness. See Mobil Oil Corp. v. Attorney Gen. of Virginia, 940 F.2d 73, 75 (4th Cir. 1991).

We have reviewed the record, briefs, and pertinent case law on this matter, and we have had the benefit of oral argument. Our careful de novo review persuades us that the rulings of the district court were correct. Accordingly, we affirm the judgments of the district court. See Catawba Indian Tribe of South Carolina v. City of North Myrtle

6

Beach, No. CA-97-3000-4-22 (D.S.C. Dec. 30, 1998 & July 30, 1999).

AFFIRMED

7