UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KARIN SKOLD VAN SLYKE,
            *Plaintiff-Appellant,*

v.                                                    No. 00-2349

NORTHROP GRUMMAN CORPORATION,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-98-2791)

Argued: May 10, 2001

Decided: August 27, 2001

Before NIEMEYER and GREGORY, Circuit Judges, and
Arthur L. ALARCON, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Philip J. Simon, HELLER, HURON, CHERTKOF, LER-
NER, SIMON & SALZMAN, P.L.L.C., Washington, D.C., for
Appellant. James Joseph Kelley, II, MORGAN, LEWIS & BOCK-
IUS, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** James H.
Heller, Douglas B. Huron, HELLER, HURON, CHERTKOF, LER-

NER, SIMON & SALZMAN, P.L.L.C., Washington, D.C., for Appellant. Kathy B. Houlihan, Robyn B. Weiss, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Karin Skold Van Slyke ("Van Slyke") appeals the district court's order granting summary judgment to Northrop Grumman Corporation ("Northrup Grumman") on her claims of gender-based employment discrimination. Finding no error, we affirm.

### I.

Van Slyke worked as an engineer for Northrop Grumman and its predecessor, Westinghouse Electric Corporation, from 1978 until 2000. Throughout her employment, Van Slyke progressed from a salary Code 27 (or Code 07, as it was termed when Van Slyke started at Westinghouse) to a salary Code 35, resulting in a pay increase from $16,000 to $73,400. Van Slyke, though, never attained the highest Code level available to engineers, Code 36, which denoted a management level position.

Northrop Grumman did not have a fixed number of managerial positions, but instead promoted engineers to Code 36 depending on the particular job duties assigned to the employee, the employee's level of responsibility, and the employee's proven management contribution. Northrop Grumman admits that its promotion scheme was unconventional and that movement between codes was not predicated on a traditional, competitive promotion system. Instead, it was determined by the nature of the work performed and the degree of respon-

sibility given. A promotion to Code 36 also was predicated on an employee's department manager's recommendation.

From 1995 until Spring 1998, Van Slyke worked in Northrop Grumman's Electronic Sensors and Systems Sector ("ESSS"), which was responsible for the development and production of sophisticated electronic systems for the national defense and civil aviation. Specifically, Van Slyke worked in the Advanced Radar and Avionics Department ("ARAD") of the Systems Development and Technology Division ("SD&T"). Her direct supervisors there were Richard Davis and Kevin Leahy. Northrop Grumman admits that Davis and Leahy knew Van Slyke sought a Code 36 promotion. Additionally, it is undisputed that Van Slyke often took the initiative in her attempts to attain such a promotion, seeking Davis and Leahy's advice regarding promotions and unilaterally making decisions she thought would help her obtain a promotion.

In 1997 and 1998, Davis worked with Van Slyke to set performance objectives and assign responsibilities on particular programs that could be expected to eventually provide Van Slyke with management opportunities. Van Slyke, though, did not follow up on some opportunities offered to her. For example, in 1996, Davis and Van Slyke agreed that she should work on the CryoRadar Program because it could provide her with the opportunity for eventual advancement to Code 36. Within a few months of accepting the assignment, though, Van Slyke asked Davis to decrease her workload and allow her to take a supporting role on another program, which did not involve a management role. When Van Slyke completed work on the other project, she returned to CryoRadar, but provided only "cost proposal support."

Similarly, in February 1998, Van Slyke and Leahy agreed that he would work with her to find job opportunities warranting a Code 36 promotion. They jointly determined that such an opportunity could be available in managing the cost proposal for the Radar Technology Insertion Program ("RTIP"). Leahy testified that he believed Van Slyke would have received a Code 36 promotion had she remained with RTIP and Northrop Grumman been awarded the contract for the project. Van Slyke testified that her RTIP supervisor, Joel Brown, promised her a promotion if Northrop Grumman landed the contract.

Van Slyke, though, asked Leahy to reassign her RTIP responsibilities to someone else after only two months, stating that she would be "pleased to take on the more appropriate role of supporting" a program manager.

Van Slyke alleges that Leahy and Davis repeatedly passed her over for Code 36 promotions. She claims that three less-experienced men, R. Tranchini, E. Capelle and P. Reid,* received Code 36 promotions in 1997-98 and that Northrop Grumman never considered her for the management positions they received. Leahy concedes that Van Slyke could have held the specific positions given to Tranchini, Capelle and Reid and that she was not considered for their specific positions.

Throughout her tenure at Northrop Grumman, Van Slyke generally received favorable performance reviews. However, a few supervisors noted that she gravitated to supporting roles and lacked leadership abilities. Additionally, Van Slyke consistently ranked near the bottom of members in her department in terms of relative contribution to the organization.

According to Van Slyke, she was the only female engineer in ARAD. When she transferred out of ARAD in 1998, all of the department's 29 male engineers were either in Code 36 management positions or were slated to receive such positions by the end of 1998. Additionally, Van Slyke contends that women headed only one of 26 departments within SD&T and that, while women comprised 7.8% of the more than 1600 managers in ESSS, they comprised only 4.9% of managers in SD&T.

## II.

In December 1997, Van Slyke filed a Title VII charge with the EEOC, contending that Northrop Grumman failed to promote her

---

*On appeal and in the court below, Van Slyke extended this list of comparators to include two additional men promoted in the same time period. The district court refused to consider claims relating to these additional men, thereby restricting Van Slyke to the three men she mentioned in her complaint and in her interrogatory responses. *Van Slyke v. Northrop Grumman*, 115 F. Supp.2d 587, 592 n. 4 (D. Md. 2000).

because of gender discrimination. The EEOC issued a notice of right to sue in July 1998 and Van Slyke filed suit in August 1998. Northrop Grumman moved for summary judgment after the close of discovery, which the district court granted on September 18, 2000. *Van Slyke v. Northrop Grumman*, 115 F. Supp.2d 587 (D. Md. 2000).

In granting summary judgment, the district court first limited Van Slyke's claims to actions occurring after February 1997, *i.e.* 300 days before she filed an EEOC charge. *Id.* at 593. *See also Beall v. Abbott Laboratories*, 130 F.3d 614, 620-21 (4th Cir. 1997). The district court rejected Van Slyke's "continuing violation" argument, which was based on her contention that Northrop Grumman's promotion structure was "secretive." *Id.* The district court agreed that the promotion process was informal, but explained that the record was devoid of any evidence suggesting that it was secretive. Moreover, the district court noted that, even if the promotion structure was "secretive," Van Slyke acknowledged familiarity with the program. Finally, the district court held that the allegedly discriminatory acts that Van Slyke relies upon, which occurred more than 300 days before she filed with the EEOC, should have put her on earlier notice of possible discrimination. *Id.* at 594.

Next, the district court ruled that Van Slyke established a *prima facie* case of discrimination, *id.* at 594-96, and that Northrop Grumman adequately asserted a legitimate, non-discriminatory reason for failing to promote Van Slyke — that the comparators she identified were more qualified for their positions than Van Slyke. *Id.* at 596-97. The district court rejected Van Slyke's argument that Northrop Grumman was not entitled to a "superior qualifications" defense by failing to consider her for the comparators' specific positions. *Id.* at 596-97. The district court distinguished the line of cases Van Slyke relied upon for this proposition and explained that Northrop Grumman was aware of Van Slyke's qualifications and "repeatedly met with her to discuss positions in accord with her qualifications and skills." *Id.*

Finally, the court held that Van Slyke failed to establish that Northrop Grumman's proffered legitimate, non-discriminatory reason was pretextual. *Id.* at 597-98. The district court rejected Van Slyke's statistical defense, explaining that "statistical evidence has little, if any, relevance in an individual disparate treatment action." *Id.* at 597.

Additionally, the district court rejected Van Slyke's assertion that she was better qualified than her comparators, explaining that "[t]he mere assertion [by the plaintiff] that [the plaintiff] was more qualified is insufficient to establish pretext." *Id.* at 598 (quoting *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 763 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999)).

## III.

This Court reviews a grant of summary judgment *de novo. Higgins v. E. I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate only if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is in dispute when its existence or non-existence could lead a jury to different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. *Id.* Mere speculation by the non-moving party cannot create a genuine issue of material fact. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court must view the evidence in the light most favorable to the non-moving party. *Smith v. Virginia Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

We have reviewed the record, briefs, and pertinent case law on this matter *de novo*, and have had the benefit of oral argument. Our careful review persuades us that the district court's ruling was correct. Accordingly, we affirm the grant of summary judgment to Northrop Grumman on the reasoning set forth in the district court's order. *See Van Slyke v. Northrop Grumman*, 115 F. Supp.2d 587 (D. Md. 2000).

*AFFIRMED*