UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CALVIN GRESHAM,

      *Plaintiff-Appellant,*

      v.

FOOD LION, INCORPORATED,

      *Defendant-Appellee.*

No. 01-1453

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., Chief District Judge.
(CA-99-2368-3-17-BC)

Argued: February 26, 2002

Decided: March 22, 2002

Before NIEMEYER, Circuit Judge, HAMILTON,
Senior Circuit Judge, and Raymond A. JACKSON,
United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Calvin Allison Rouse, Augusta, Georgia, for Appellant.
Charles Theodore Speth, II, HAYNSWORTH, BALDWIN, JOHN-
SON & GREAVES, L.L.C., Columbia, South Carolina, for Appellee.
**ON BRIEF:** Charles E. McDonald, III, HAYNSWORTH, BALD-
WIN, JOHNSON & GREAVES, L.L.C., Greenville, South Carolina,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Calvin Gresham (Gresham) appeals the district court's grant of summary judgment in favor of Food Lion, Incorporated (Food Lion) on his claim alleging that Food Lion breached the terms of a settlement agreement he entered into with Food Lion. We affirm.

I

In October 1987, Gresham was hired by Food Lion as a store detective in Food Lion's Loss Prevention Department. He held several positions in the Loss Prevention Department until June 19, 1994, when he became a loss prevention field agent working in Food Lion's Southern Division, Region I, Middle Georgia District, which consisted of twenty-four stores in the Augusta and Macon areas.[1] As a loss prevention field agent, Gresham was responsible for investigating theft, losses, and food shortages in Food Lion stores.

In 1993, Gresham and another Loss Prevention Department employee, Jerome Settles, who worked in and near the Columbia, South Carolina area, complained to management that various decisions relating to promotions, assignments, and discipline in the Loss Prevention Department were improperly based on their race (African-American). Unsatisfied with management's response to their complaints, Gresham and Settles filed identical charges of race discrimination with the South Carolina Human Affairs Commission (SCHAC) in December 1994. Following the filing of these charges, SCHAC brokered a settlement and two nearly identical documents memorializing the terms of the settlement were signed by Gresham and Settles on February 15, 1995.

---

[1] Food Lion's Southern Division, Region I consisted of stores in, among other states, Georgia and South Carolina.

Several provisions of Gresham's settlement agreement (the Settlement Agreement) are relevant in this appeal.[2] First, the Settlement Agreement provides "that prior to any disciplinary action taken against [Gresham,] . . . the action must be approved by the Vice President of Human Resources." (J.A. 15). Second, the Settlement Agreement provides that Food Lion "agrees that there shall be no discrimination or retaliation of any kind against [Gresham]." (J.A. 16). Finally, the Settlement Agreement provides:

> It is agreed that any future disciplinary actions such as written constructive advice memoranda and suspensions will be reviewed by the Vice President of Human Resources prior to finalization. It is further agreed that any more serious disciplinary actions such as demotions or involuntary terminations will be submitted to arbitration which shall be binding upon Food Lion and Gresham.

(J.A. 18).

In June 1994, while Gresham and Settles' charges of race discrimination were pending before SCHAC, Marlund Harvey (Harvey), who is also an African-American, became the Regional Loss Prevention Field Manager for Southern Division, Region I. When Harvey became the Regional Loss Prevention Field Manager for Southern Division, Region I, four loss prevention field agents reported directly to him. All of these agents, Gresham, Settles, Charles Brown (Brown), and James Sabb (Sabb), were African-Americans. Harvey reported to Ron Wooley (Wooley), the Loss Prevention Department Field Manager, who in turn reported to Clayton Edwards, the Director of the Loss Prevention Department. Edwards reported directly to Gene McKinley, the Vice President of Human Resources.

About four months after Harvey became Gresham's supervisor, Harvey conducted a regularly scheduled performance evaluation of Gresham. Gresham objected to this evaluation because he felt he had

---

[2]The Settlement Agreement is comprised of two documents that were executed on February 15, 1995. The first is entitled "Negotiated Settlement Agreement" and the second is entitled "Waiver and Release." (J.A. 15, 17).

not worked long enough with Harvey to be accurately evaluated. Harvey agreed that there had not been enough time to make an accurate evaluation and, pursuant to Gresham's request, the evaluation was rescinded and Gresham was evaluated on August 17, 1995.

Food Lion's standard evaluation form rates employees in eight categories on a scale of one to five, with one constituting a rating of unsatisfactory and five constituting a rating of excellent. Gresham received an overall evaluation score of 2.5. Gresham received a two rating (below standard) in four categories—quality and quantity of output, relating to others, maturity and objectivity, and professional development. He received a three rating (standard) in the other four categories.

The two rating in quality and quantity of output reflected the low number of investigations Gresham was performing. This rating was validated by the official statistics kept by Food Lion on the number of investigations conducted and the hours spent on investigations during 1995. Among Harvey's four loss prevention field agents, Gresham performed the fewest investigations and spent the least amount of hours on investigations. In contrast, Settles performed the greatest number of investigations and spent the most hours on investigations.

Harvey's evaluation of his other loss prevention field agents in 1995 resulted in ratings of 2.6 for Settles, 3.0 for Sabb, and 3.6 for Brown. None of these agents received more than a rating of three in the critical category of quality and quantity of work.

In late 1995, management undertook a restructuring of its Loss Prevention Department. Management realized that the staffing level of loss prevention field agents varied greatly from region to region. Some regions had up to five loss prevention field agents, while other regions had only two. In addition, management decided that the responsibility for safety compliance should be reassigned to one person within a region. Previously, safety had been just one of the many responsibilities assigned to loss prevention field agents. A new structure was established in which each region would be staffed with two loss prevention field agents and a regional safety manager. The deci-

sion was also made at this time to phase out any remaining store detectives from the Loss Prevention Department.

In Harvey's region, the new structure provided for three positions where previously there had been four. Harvey was given the responsibility of choosing which of his loss prevention field agents would keep positions within the region. Harvey ranked his four loss prevention field agents based on productivity and performance. The primary factor relied upon was a loss prevention field agent's productivity as measured by the number of investigations performed. Wooley had emphasized the importance of investigations in a January 13, 1995 memorandum in which he stated that investigations should "comprise the majority" of a loss prevention field agent's time. (J.A. 219). Settles and Brown were rated as the top agents and Gresham was rated last in both number of investigations and hours spent on investigations. Overall performance, as measured by the most recent evaluation score of each loss prevention field agent, was also considered. Gresham was rated lowest of the four employees in this area.

Harvey made the decision that the two most productive employees, Settles and Brown, would be retained as loss prevention field agents in the region. As the third rated agent, Sabb was transferred to the regional safety manager position.

On or about January 12, 1996, Harvey met with Gresham, Settles, Brown, and Saab. Gresham was told at that time that he was not going to be selected as part of the investigative team in Harvey's region. Gresham's employment was not terminated; rather, Gresham was given the option of taking available loss prevention field agent positions in Virginia or Tennessee. These were identical positions at the same salary and benefits as the loss prevention field agent position Gresham held at that time. Gresham was also given the option of pursuing a store manager or other management position in store operations in the Augusta area. Gresham rejected these options and voluntarily resigned as of January 15, 1996.

Thereafter, Gresham filed a complaint against Food Lion in the United States District Court for the District of South Carolina, alleging state law causes of action for fraudulent inducement, breach of contract, negligent supervision, vicarious liability, and negligent

breach of contract, along with a claim of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Following Food Lion's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed Gresham's state law claims for negligent supervision, vicarious liability, and negligent breach of contract.

Food Lion filed a motion for summary judgment on Gresham's Title VII claim, as well as Gresham's remaining state law claims for breach of contract and fraudulent inducement. On January 5, 1999, the district court granted summary judgment in favor of Food Lion on the Title VII claim and dismissed Gresham's remaining state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

On January 26, 1999, Gresham filed the instant action against Food Lion in the Superior Court of Fulton County, Georgia, alleging state law causes of action for breach of contract, fraudulent inducement, negligent supervision, and negligent breach of contract. On March 3, 1999, Food Lion removed the case to the United States District Court for the Northern District of Georgia. *Id.* §§ 1332, 1441. Thereafter, venue was transferred to the United States District Court for the District of South Carolina on July 14, 1999. *Id.* § 1404.

On August 16, 1999, Gresham voluntarily dismissed his negligent supervision and negligent breach of contract claims. Thereafter, Food Lion moved for summary judgment on Gresham's two remaining state law causes of action (breach of contract and fraudulent inducement). On March 2, 2001, the district court granted Food Lion's motion for summary judgment, holding that Gresham's claims for breach of contract and fraudulent inducement had no merit and that, in any event, these claims were barred by the doctrine of judicial estoppel because Gresham had failed to disclose the existence of these claims in a disclosure statement he filed in connection with a bankruptcy petition filed by Gresham in the United States Bankruptcy Court for the Southern District of Georgia.

Gresham noted a timely appeal. On appeal, Gresham only challenges the district court's decision to grant summary judgment in favor of Food Lion on his breach of contract claim.

## II

Gresham argues that the district court erred in granting summary judgment in favor of Food Lion on his breach of contract claim. Whether a party was entitled to summary judgment is a matter of law which we review *de novo*. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing the district court's grant of summary judgment, we must construe the facts in the light most favorable to the non-moving party. *Smith v. Virginia Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (*en banc*).

Under South Carolina law,[3] a party to a contract must perform all obligations assumed under the contract unless the party's performance is excused by an act of God, the law, or the other party. *Pearce-Young-Angel Co., Inc. v. Charles R. Allen, Inc.*, 50 S.E.2d 698, 701 (S.C. 1948). According to Gresham, Food Lion failed to perform several obligations it assumed under the terms of the Settlement Agreement. More specifically, Gresham argues that Food Lion breached the Settlement Agreement by: (1) not conducting a performance evaluation within ninety days of the Settlement Agreement; (2) unfairly changing the fundamental way it evaluated its loss prevention field agents; (3) giving him a 2.5 rating on his August 1995 evaluation; (4) eliminating his job; (5) disciplining him without the prior approval of McKinley; and (6) denying him his arbitration rights. We shall address each of these arguments in turn. Gresham argues that Food Lion retaliated against him by not performing his evaluation in a timely manner—within ninety days of the Settlement Agreement. Gresham's argument is flawed in at least two respects. First, the Settlement Agreement contains no provision providing for an evaluation in ninety days. Second, Gresham's argument is logically inconsistent. Gresham objected to the evaluation Harvey conducted of him four months after Harvey became his supervisor because he did not feel

---

[3]The parties agree that we should apply South Carolina law to Gresham's breach of contract claim.

that he had worked with Harvey long enough to be evaluated. Harvey agreed, and the decision was made to wait before conducting another evaluation. Obviously, Gresham cannot have it both ways. He cannot oppose his initial evaluation from Harvey as being conducted too soon because the two had not worked long enough together and, at the same time, claim that Food Lion breached the Settlement Agreement by not evaluating him within ninety days of the Settlement Agreement.

Gresham argues that Food Lion breached the Settlement Agreement's retaliation provision when it unfairly changed the fundamental way it evaluated its loss prevention field agents. The Settlement Agreement does not discuss how loss prevention field agents were supposed to be evaluated, and the circumstances surrounding how the loss prevention field agents were evaluated do not suggest the process was retaliatory in nature.

On January 13, 1995, Wooley, the Loss Prevention Department Field Manager, issued a memorandum to all loss prevention field agents. The memorandum, which predated the Settlement Agreement, indicated what Food Lion expected of its loss prevention field agents. Wooley had all loss prevention field agents, including Gresham, sign a copy of the January 13 memorandum. The memorandum discusses different tasks that should be performed by the loss prevention field agents in order to carry out their duties. Specifically, the memorandum states, in part, "[a]ll investigations, which should comprise the majority of the Agents' time, should be followed up with training to see that identified problems are corrected." (J.A. 219).

According to Gresham, Wooley's January 13, 1995 memorandum constituted a radical change in the way loss prevention field agents would be evaluated, as the focus of evaluations shifted from the amount of store losses to the number of investigations and the hours spent on investigations. Gresham's argument fails for the simple reason that, even if the January 13, 1995 memorandum (which predated the Settlement Agreement) constituted a change in policy regarding what was expected of the loss prevention field agents, the evidence is uncontradicted that these changes applied to all loss prevention field agents. Gresham offers no evidence to indicate that Food Lion or Harvey used different procedures or different standards in evaluat-

ing any of the loss prevention field agents. Accordingly, we find no merit to Gresham's contention that Food Lion breached the Settlement Agreement's retaliation provision when it allegedly changed the way it evaluated its loss prevention field agents.

Gresham argues that Food Lion breached the Settlement Agreement's retaliation provision when Harvey gave him a 2.5 rating. The Settlement Agreement does not discuss how Gresham was supposed to be evaluated, and the circumstances surrounding Harvey's evaluation of Gresham do not suggest that Harvey or Food Lion retaliated against Gresham.

Gresham was evaluated using the same standards as the other loss prevention field agents who worked in the Loss Prevention Department, including Settles, who also filed a charge of discrimination against Food Lion and signed an almost identical settlement agreement as the one signed by Gresham. Gresham received an overall rating of 2.5 on a scale of five. Harvey was the only person involved in Gresham's performance evaluation and was not instructed by any other representative of Food Lion as to how to rate Gresham's performance. Gresham admitted that Harvey did not view the evaluation as bad and, in fact, the evaluation is littered with positive comments by Harvey about Gresham. Harvey had no knowledge that Food Lion was planning a restructuring of the Loss Prevention Department at the time he performed the evaluation, and there is no evidence in the record that Harvey retaliated against Gresham to affect his future employment with Food Lion. Under these circumstances, we must conclude that Food Lion did not retaliate against Gresham when Harvey gave Gresham a 2.5 rating.

Gresham also argues that Food Lion breached the terms of the Settlement Agreement when Food Lion eliminated his job as part of the restructuring of the Loss Prevention Department. This argument has no merit.

There is no evidence in the record to suggest that the restructuring of the Loss Prevention Department was implemented, even in part, to punish Gresham for filing a previous claim of discrimination against Food Lion or for any other actions by Gresham. Gresham's position was eliminated as part of a restructuring of the Loss Prevention

Department in order to make the department more efficient. More-over, Harvey's decision regarding which loss prevention field agents would remain after the restructuring was based on objective and business-based criteria.

Next, Gresham argues that Food Lion breached the Settlement Agreement by disciplining him without receiving prior approval from McKinley, the Vice President of Human Resources. Although the Settlement Agreement contains language indicating that Gresham was not to be disciplined without the prior approval of McKinley, there is no evidence in the record demonstrating that Gresham was disciplined in any way by Food Lion after the parties entered into the Settlement Agreement. As acts of discipline, Gresham points to his 2.5 rating on his evaluation and the elimination of his position. Logically, an objective evaluation cannot be construed as an act of discipline. The same can be said about the elimination of Gresham's position, as the decision to eliminate Gresham's position was based on objective and business-based criteria.

Finally, Gresham argues that Food Lion breached the terms of the Settlement Agreement by denying him arbitration. The Settlement Agreement provides that "any more serious disciplinary actions such as demotions or involuntary terminations will be submitted to arbitration which shall be binding upon Food Lion and Gresham." (J.A. 18). Unfortunately for Gresham, no action was taken against Gresham that he could have presented to arbitration under the Settlement Agreement. Gresham was neither demoted nor involuntarily terminated. Rather, he voluntarily resigned when he declined to transfer to a loss prevention field agent position in Virginia or Tennessee or to pursue a management position in Augusta.

In summary, the evidence, in a light most favorable to Gresham, fails to support his claim that Food Lion breached the Settlement Agreement.

## III

For the reasons stated herein, the judgment of the district court is affirmed.[4]

---

[4]In light of our holding that Gresham's breach of contract claim fails on the merits, we need not address the district court's alternative holding

*AFFIRMED*

that Gresham's breach of contract claim was barred by the doctrine of judicial estoppel. In addition, in light of our conclusion that Gresham's breach of contract claim fails on the merits, we need not address Food Lion's alternative argument that Gresham's breach of contract claim is barred by the doctrines of *res judicata* and collateral estoppel.