**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1003

ESTATE OF WAYNE A. JONES BY ROBERT L. JONES AND BRUCE A. JONES, Administrators of the Estate of Wayne A. Jones,

Plaintiff – Appellant,

v.

THE CITY OF MARTINSBURG, WEST VIRGINIA; PFC. ERIK HERB; PFC. DANIEL NORTH; PTLM. WILLIAM STAUBS; PTLM. PAUL LEHMAN; PFC. ERIC NEELY,

Defendants – Appellees,

and

MARTINSBURG POLICE DEPARTMENT; DOES 1 THROUGH 25,

Defendants.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  Gina M. Groh, Chief District Judge.  (3:13-cv-00068-GMG-RWT)

Argued:  January 23, 2018                    Decided:  March 5, 2018

Before GREGORY, Chief Judge, and DUNCAN and FLOYD, Circuit Judges.

Affirmed in part and reversed and remanded in part by unpublished per curiam opinion.

Christopher Edwin Brown, BROWN FIRM PLLC, Alexandria, Virginia, for Appellant. Philip W. Savrin, FREEMAN MATHIS & GARY, LLP, Atlanta, Georgia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Estate of Wayne A. Jones ("the Estate") challenges the district court's decision to deny withdrawal of admissions under Federal Rule of Civil Procedure 36(b) and its grant of summary judgment in favor of the Defendants-Appellees. We conclude that the contested admissions must be deemed admitted because the Estate failed to file timely objections to a magistrate judge's decision to admit the admissions. However, notwithstanding those admissions, we conclude that genuine issues of disputed material fact remain as to whether police officers used excessive force at the time they shot and killed Wayne A. Jones. Accordingly, we reverse the district court's grant of summary judgment on behalf of Defendants-Appellees and remand for further proceedings.

I.

Because the Estate appeals the district court's grant of summary judgment to the Defendants-Appellees, the facts below are recounted in the light most favorable to the Estate. *See Yates v. Terry*, 817 F.3d 877, 881 (4th Cir. 2016).

Around 11:30 p.m. on March 13, 2013, Officer Paul Lehman was on patrol when he spotted Jones walking in the road, instead of on the sidewalk, near downtown Martinsburg, West Virginia. West Virginia Code § 17C-10-6(a) and City of Martinsburg, W. Va., Ordinance 371.06(a) require pedestrians to use a sidewalk where available.

Lehman parked his police car near Jones, exited the vehicle, and asked Jones why he was walking in the street. Lehman then asked Jones for identification. Jones replied that he did not have any identification. The officer then asked to search him for weapons.

3

Jones first asked, "What's a weapon?" When Lehman explained that this meant "anything--guns, knives, clubs," Jones acknowledged that he did have "something." The encounter quickly escalated. Lehman called the Martinsburg Police Department for backup. Lehman began to demand that Jones put his hands on the police car. Jones did not comply and instead tried to move away from the officer. Lehman began to repeatedly shout, "Put your hands on the car." Jones responded, "What are you trying to do?"; "What do you want?"; and "What did I do to you?" Lehman then pulled out his taser and discharged it on Jones. Officer Daniel North reached the scene at approximately the same time that Lehman was discharging his taser. North tased Jones as well. The officers reported that the tasers appeared to have no effect on Jones.

Jones broke away and ran down the street. North pursued him on foot and was the first officer to catch up with him. Officer William Staub arrived at the scene and ran toward Jones and North. Jones had "cornered himself" in "a stoop entranceway to a bookstore, up a couple steps." North stated that he told Jones to "just get on the ground, just listen to what we're saying," to which Jones replied "I didn't do anything wrong." Staub said that "North had his taser out but he wasn't doing nothing" when Staub approached. Jones moved his hands up. The night of the incident, Staub said that "the guy kind of put his hands up like 'alright' [resigned tone], so me and North both kind of grabbed his hands." Staub and North grabbed Jones, and the three tumbled down the stairs such that North was thrown away from Staub and Jones. Staub "chipped" a bone in his thumb during the fall. Staub wrestled Jones to the ground and put him in "a choke

4

hold, just to kind of stop him from resisting." A loud choking or gurgling sound, which seems to be coming from Jones, is audible on Staub's audio recorder at this time.

Lehman rejoined the group, and officers Eric Neely and Erik Herb arrived on the scene. One of the officers tased Jones for a third time, then North applied "a drive stun without any probes." The officers reported that these efforts to stun Jones had no visible effect.

Staub was on his knees on the ground and still had Jones in a choke hold when he felt "like a scratch on my hand," which he initially "didn't think much of" because "we were rolling around on the concrete." Then, "a second or two later," at approximately the same time that the other officer tased Jones, Staub felt "a sharp poke in my side" which "alarmed" him, so he partially released Jones and raised up to look at what was poking him. Staub reported that he then "saw the subject's right hand with a fixed blade knife in his hand" and he shouted, "He's got a knife! He's got a knife!" Neely also saw "a weapon in [Jones's] right hand."

The officers drew back, and Jones remained on the ground, laying "on the ground with his right side on the ground" and his "right elbow . . . on the ground." All five officers drew their guns and ordered Jones to drop the weapon. Lehman reported that Jones "did not make any overt acts with the knife towards the officers." On the night of the incident, Staub similarly reported that as the officers stepped back, Jones "still had the fucking knife in his hand and he wasn't fucking doing nothing." The five officers drew their firearms and formed a semi-circle around the recumbent Jones. Seconds later, the

5

officers fired a total of twenty-two rounds at Jones, killing him where he lay on the sidewalk. Jones died shortly before midnight.

## II.

On June 13, 2013, the Estate sued the City of Martinsburg and several unnamed police officers for Jones's death. The Estate later amended its complaint to replace the unnamed officers with Lehman, North, Staub, Neely and Herb. In relevant part, the amended complaint alleged three claims under 42 U.S.C. § 1983, which creates a private cause of action against state actors for violations of a plaintiff's federal rights, and two state-law claims, as well as other claims that were dismissed and not challenged on appeal. As to the § 1983 claims, the Estate first argued that the officers used excessive force in violation of the Fourth Amendment to the U.S. Constitution when they beat, tased, and shot Jones. Second, the Estate alleged that the officers violated the Fourteenth Amendment by depriving Jones's family of the opportunity to maintain a relationship with him. Third, the Estate claimed that the City of Martinsburg was responsible for the officers' constitutional violations because it failed to properly train them. Finally, the Estate alleged state-law negligence and wrongful death claims against the officers.

On December 23, 2013, the Defendants-Appellees served a Request for Admissions ("RFA") on the Estate. The Defendants-Appellees' RFA included the following statements about the night Jones died: (1) "Wayne A. Jones advised an officer that he had 'something' when the officer asked [him] if he had a weapon"; (2) "Wayne A. Jones failed to comply with commands of officers to stop resisting"; (3) "Wayne A. Jones

6

was carrying a knife on his person"; (4) "officers gave verbal commands for Wayne A. Jones to drop his knife before they fired their weapons"; (5) "Wayne A. Jones refused to drop his knife"; and (6) "Wayne A. Jones stabbed an officer with his knife, prior to any officer firing their service guns."

The Estate's response to the RFA was due on January 27, 2014, but it filed the response two days late, on January 29. Consequently, the Defendants-Appellees moved the district court to deem all of the statements in their RFA admitted pursuant to Rule 36(a)(3), which provides that statements contained in an RFA are admitted unless the party opposing the admission timely moves to challenge their veracity. The Defendants-Appellees' motion was referred to a magistrate judge, who granted it on April 16, 2014. The Estate did not file a Rule 36(b) motion requesting that the district court permit withdrawal of the admissions, nor did it file objections to the magistrate judge's order granting the Defendants-Appellees' motion or appeal the magistrate judge's order to the district court. *See* Order Den. Withdrawal of Admiss. at 6, *Estate of Jones v. City of Martinsburg*, No. 13-CV-63 (N.D. W. Va. Dec. 2, 2016), ECF. No. 210.

On August 8, 2014, the Defendants-Appellees moved for summary judgment on all claims. The district court granted the motion. With regard to the Estate's § 1983 claim against the officers for using excessive force in violation of Jones's Fourth Amendment rights, the district court granted summary judgment because it concluded that each of the officers had used reasonable force in light of the facts that Jones was armed with a knife, was resisting arrest, and thus posed a serious threat to the officers' safety. The court granted summary judgment on the Estate's second § 1983 claim

7

brought against the officers for violating Jones's family's Fourteenth Amendment rights because the court concluded this claim was not cognizable. The court then granted summary judgment on the Estate's third § 1983 claim against the city because of its previous findings that "the officers did not use excessive force and the Fourteenth Amendment claim is not cognizable." *See* Mem. Order and Op. Granting Defs.' Mot. for Summ. J. at 19, *Estate of Jones v. City of Martinsburg*, No. 13-CV-63 (N.D. W. Va. Oct. 15, 2014), ECF No. 162. As to the Estate's state-law claims, the court granted summary judgment as well, noting not only that the Estate had failed to address these claims in its response but also that these claims failed as a matter of law.

The Estate appealed the district court's decision, arguing that its late response to the Defendants-Appellees' RFA was a constructive motion to withdraw admissions pursuant to Rule 36(b), which the district court should have considered before granting summary judgment. On July 6, 2016, this court remanded the case with instructions that the district court consider whether the Estate should be permitted to withdraw its admissions under Rule 36(b). *Estate of Jones v. City of Martinsburg*, 655 F. App'x 948, 949 (4th Cir. 2016). This court's order expressed concern that the "defendant's motion to deem requests for admissions admitted" appeared to give "the motion a dispositive effect" but also explained that the order "in no way opines on the merits of such consideration." *Id.* Upon consideration of the Rule 36(b) factors, the district court issued an order denying withdrawal of the admissions on December 2, 2016.

This appeal followed.

III.

On appeal, we consider first whether the Defendants-Appellees' requested admissions were properly deemed admitted. We then consider whether the district court properly granted summary judgment in the Defendants-Appellees' favor.

A.

We conclude that the Defendant-Appellees' requested admissions were properly deemed admitted, though not for the reasons presented in the district court's Order Denying Withdrawal of Admissions.

In our previous order, we remanded to the district court with instructions to consider "the discretionary factors in Rule 36(b) in determining whether to allow the withdrawal of the admissions" but "in no way opine[d] on the merits of such consideration" or on the merits of the parties' arguments more generally. *Id.* The purpose of this limited remand was to complete the factual record before reaching the merits of the parties' claims. We hoped that the district court's analysis of the Rule 36(b) factors would be illuminating. Not only did this not come to pass, but we are, in fact, not persuaded that the district court correctly applied each of the Rule 36(b) factors. Nevertheless, after considering the district court's Order Denying Withdrawal of Admissions and the parties' additional briefing, we are now satisfied that the record before this court is sufficient for us to decide on the merits whether the Defendants-Appellees' requested admissions should be deemed admitted.

9

We conclude that the admissions should be deemed admitted because the Estate waived its right to challenge the magistrate judge's order deeming the admissions admitted when it failed to file any timely objection.[1] A party's failure to object to a magistrate judge's order "waives further review" of that order. *Solis v. Malkani*, 638 F.3d 269, 274 (4th Cir. 2011). As the Supreme Court noted, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, notwithstanding this standard, a Court of Appeals may determine that it is necessary to excuse a party's waiver if the "interests of justice" so require. *See id.* at 155.

The Estate failed to object to the magistrate's decision to admit the Defendants-Appellees' requested admissions. To date, the Estate has failed to persuade this court either that waiver did not occur or that such waiver should be excused in the interests of justice. Regardless of the standard of review applied, we now conclude that the Estate waived review of the admission of the Defendants-Appellees' requested admissions.[2] Accordingly, the Defendants-Appellees' admissions must be deemed admitted.

---

[1]Even the Estate's late responses to the Defendants-Appellees' RFA, which it claims constituted a constructive Rule 36(b) motion, occurred before the magistrate judge's decision and thus cannot be considered an objection to that decision.

[2]The Supreme Court declined to decide what standard of review applies to a court of appeals' review of waiver exceptions. *Thomas*, 474 U.S. at 155 n.15. We similarly decline to decide what standard of review applies because the Estate fails to show that an exception to waiver would serve the interests of justice under any standard.

B.

Upon review of the facts presented into evidence, drawing reasonable inferences in favor of the Estate, we conclude that a triable issue of material fact remains as to whether the officers' use of force was reasonable. Accordingly, we reverse the district court's grant of summary judgment and remand for further proceedings.

We review a district court's grant of summary judgment de novo. *Lee v. Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (citing *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988)). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining whether the grant of summary judgment was appropriate, we must 'view the evidence in the light most favorable to the nonmoving party' and refrain from 'weigh[ing] the evidence or mak[ing] credibility determinations.'" *Lee,* 863 F.3d at 327 (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)).

A law enforcement officer's use of force in the course of an arrest, investigatory stop, or other seizure of one's person is analyzed under the Fourth Amendment's "objective reasonableness" standard to determine whether that force was excessive. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The test of objective reasonableness is not precise or mechanistic, and "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

11

Furthermore, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)). In other words, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

As noted above, this court's previous order did not opine on the merits, including the issue of whether the admissions were in fact dispositive of a claim or defense raised by the Estate. *See Estate of Jones*, 655 F. App'x at 949. Having concluded in the preceding section that the admissions must be admitted, this court is now prepared to consider whether these admissions were dispositive of the case on the merits such that summary judgment was properly granted to the Defendants-Appellees. We conclude that they were not.

In addition to the facts described above in the light most favorable to Jones, the Estate must accept as admitted that Jones (1) "advised an officer that he had 'something' when the officer asked [him] if he had a weapon"; (2) "failed to comply with commands of officers to stop resisting"; (3) "was carrying a knife on his person"; and that (4) "officers gave verbal commands for [Jones] to drop his knife before they fired their weapons"; but that Jones (5) "refused to drop his knife" and had (6) "stabbed an officer with his knife, prior to any officer firing their service guns."

Even though Jones did not release the knife when instructed to do so, a reasonable jury could consider the totality of the facts and still find that the officers exercised

12

excessive force. Most critically, it is not clear that Jones continued to pose an immediate threat of physical harm to the officers at the time they shot and killed him. The video evidence shows that when the officers backed away, drew their firearms, and formed a semi-circle around Jones, Jones remained on the ground. At least one police officer stated that Jones "did not make any overt acts with the knife towards the officers" once they stepped back. Furthermore, the officers reported that Jones lay on his right side on the sidewalk with the knife in his right hand, which would further support a reasonable jury finding that Jones was not wielding the knife when the officers shot him.

The district court's analysis wholly fails to account for these facts and the reasonable inferences that could be drawn from them in the Estate's favor. Instead, the district court incorrectly assumed that the deceased's possession of a knife and the fact that he resisted arrest necessarily rendered the officers' use of deadly force reasonable. In doing so, the district court erred by considering the facts in the light most favorable to the officers, concluding that the Defendants-Appellees' version of events was essentially undisputed despite discrepancies among the officers' accounts, and reasoning that Jones's continuing grasp on the knife from where he lay on the ground--beaten, choked, and tased--indisputably constituted an immediate threat to the officers' safety at the time he was shot. *See* Mem. Order and Op. Granting Defs.' Mot. for Summ. J. at 12–17, *Estate of Jones v. City of Martinsburg*, No. 13-CV-63 (N.D. W. Va. Oct. 15, 2014), ECF No. 162.

Because genuine issues of material fact remain which underlie the determination of whether the force the officers used was excessive, we conclude that summary

13

judgment was improper on the Estate's § 1983 claim against the officers for use of excessive force in violation of Jones's Fourth Amendment rights, as well as on the related § 1983 claim brought against the city. Accordingly, we reverse and remand the case to the district court for further proceedings on these claims.


IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.*